AUSABLE CHASM COMPANY, Appellant and Respondent, *v.* THE STATE OF NEW YORK, Respondent and Appellant. (Claim No. 23497.)

CHEMICAL BANK AND TRUST COMPANY, as Executor of MARGARET J. ROWAN, Deceased, Appellant and Respondent, *v.* THE STATE OF NEW YORK, Respondent and Appellant. (Claim No. 23502.)

(Submitted January 22, 1935; decided February 26, 1935.)

*Thomas F. Conway, Thomas E. O'Brien* and *William F. Pritchard* for claimants, appellants and respondents. The statute under consideration does not offend section 9 of article VIII of the State Constitution, prohibiting the State from paying money " in aid of any association, corporation or private undertaking." The State had the right to recognize its moral obligation to the claimants to recompense them for their outlay in the construction of the bridge of which the public at large has had the benefit, and without which the public at large would have lost the benefit of the State road north and south of the bridge. (*Lorillard* v. *Town of Monroe*, 11 N. Y. 392; *People* v. *Rensselaer & Saratoga R. R. Co.*, 15 Wend. 113; *Markey* v. *County of Queens*, 154 N. Y. 675; *County of Albany* v. *Hooker*, 204 N. Y. 1; *People* v. *Draper*, 15 N. Y. 532; *Transportation Co.* v. *Chicago*, 99 U. S. 635; *Matter of McAneny*, 232 N. Y. 377; *Hunter* v. *City of Pittsburgh*, 207 U. S. 161; *East Hartford* v. *Hartford Bridge Co.*, 10 How. [U. S.] 511; *People* v. *Tweed*, 63 N. Y. 202; *People ex rel. McLean* v. *Flagg*, 46 N. Y. 401; *People ex rel. Kemmler* v. *Durston*, 119 N. Y. 569; *Matter of N. Y. Elev. R. R. Co.*, 70 N. Y. 327; *People ex rel. Simon* v. *Bradley*, 207 N. Y. 592; *Matter of McAneny*, 232 N. Y.

377; *People* v. *Budd*, 117 N. Y. 1; *Waterloo Woolen Mfg. Co.* v. *Shanahan*, 128 N. Y. 345; *Williamsburgh Sav. Bank* v. *State*, 243 N. Y. 231.) Even if the claimant, Ausable Chasm Company, derived any benefit or advantage from the location of the road and the construction of the bridge, that fact cannot be even considered in determining either the constitutionality of the act or the moral obligation that underlies it. (*Waterloo Woolen Mfg. Co.* v. *Shanahan*, 128 N. Y. 345; *Oswego & Syracuse R. R. Co.* v. *State*, 226 N. Y. 351; *Matter of O'Berry*, 179 N. Y. 285.)

*John J. Bennett, Jr., Attorney-General* (*Henry Epstein, Leon M. Layden* and *John L. Campbell* of counsel), for defendant, respondent and appellant. The State had neither the power nor duty to pay these claims until the Court of Claims passed upon them under the authority of chapter 368 of the Laws of 1933. (*O'Hara* v. *State*, 112 N. Y. 146; *Sooysmith & Co.* v. *American Surety Co.*, 28 App. Div. 346; *Randall* v. *Grant*, 59 App. Div. 485.) Chapter 368 of the Laws of 1933 is in violation of the provisions of the Constitution of the State of New York and is void and provides no proper basis for the recovery of damages under these claims. (*Farrington* v. *State*, 248 N. Y. 112; *Hines* v. *State*, 234 N. Y. Supp. 224.)

LEHMAN, J. The claimants have recovered judgments in the Court of Claims for the amounts which they expended for the construction of a bridge over the Ausable river. The Legislature by special statute authorized the hearing of the claim. The question presented upon this appeal is whether the statute is a valid exercise of legislative power.

It appears that the Legislature in 1911 appropriated moneys for the construction and improvement of parts of Route 22, a State highway (Laws of 1911, chap. 133). In the years 1912 and 1913 the State Highway Commission, pursuant to statutory provision, entered into contracts for the construction of two sections of a State

highway as part of said Route 22 along the lines of dirt roads which extended from Ausable Chasm to the southerly side of Ausable river and from the northerly side of the river along or near Lake Champlain to Platts-burgh. The two sections were completed in October, 1913. The Legislature had made no provision for the construction of a bridge across the Ausable river at that point. Without a bridge the sections of the State high-way would be of little or no substantial use to the public at large. The claimants in 1913 caused a bridge to be constructed over the Ausable river connecting the two sections of the State highway, and thus rendered available each of the sections for the public at large. The cost of the construction of the bridge was $9,410.41 and the claimants paid that sum. Route 22 is an important highway extending from the city of Troy to Rouses Point and is used by through traffic to Canada and the Adiron-dack mountains. By the construction of the bridge the distance between important points for automobile tourists and others was decreased by four miles.

In 1913 no statute authorized the State Highway Com-mission or any other State officer or department to construct or pay for the bridge. Highways did not at that time include bridges having a span of more than five feet (Laws of 1911, chap. 646). The Highway Law (Laws of 1908, chap. 330; Cons. Laws, ch. 25) then pro-vided: " The towns of this state, except as otherwise herein provided, shall be liable to pay the expenses for the construction and repair of its public free bridges constructed over streams or other waters within their bounds " (§ 250). Thus in 1913, when the claimants constructed the bridge, no legal claim could be made against the State for reimbursement for its cost.

Twenty years thereafter the Legislature attempted to create a legal claim against the State where none had previously existed. By chapter 368 of the Laws of 1933 it conferred upon the Court of Claims jurisdiction to hear, audit and determine claims of such persons as may have

" contributed, advanced, laid out or expended moneys " for the construction of this bridge and directed it to render judgment for such sums if it " finds that the construction of said bridge was at the cost and expense of the claimants and was necessary for the public convenience." Such findings have now been made upon ample evidence. The question remains whether the statute was within the constitutional limitations upon the legislative power.

The Constitution provides that " neither the credit nor the money of the State shall be given or loaned to or in aid of any association, corporation or private undertaking " (Art. VIII, § 9). We have said that this prohibition does not " prevent the Legislature from recognizing claims founded on equity and justice, though not such as could have been enforced in a court of law if the state had not been immune from suit." (*Lehigh Valley R. R. Co.* v. *Canal Board*, 204 N. Y. 471, 475.) It does not prohibit the recognition of claims " which have their roots in equity and justice." (*Oswego & Syracuse R. R. Co.* v. *State*, 226 N. Y. 351, 356.) The Legislature has a wide discretion as to the conditions upon which it will recognize a claim which is founded in equity and justice. It may not assert that discretionary power as a cloak for the grant of a gratuity or charity. " The decision by the Legislature that certain facts create a moral obligation, even if those facts exist, is not conclusive. The courts will still be called upon to decide whether its judgment was correct." (*Williamsburgh Sav. Bank* v. *State*, 243 N. Y. 231, 241.) The constitutional limitation upon the power of the Legislature leaves open only the restricted field of " moral obligations." Whether the Legislature has intruded into a broader field must in each case be decided by the courts.

Such terms as " moral obligation " and obligations " founded on justice and equity " are flexible. They serve to formulate the problem rather than to provide the formula by which the problem may be solved. No yardstick has ever been devised which can be

mechanically applied. None the less, in every case there must exist an obligation which would be recognized, at least, by men with a keen sense of honor and with real desire to act fairly and equitably without compulsion of law. The Constitution does not prohibit the Legislature from doing in behalf of the State what a fine sense of justice and equity would dictate to an honorable individual. It does prohibit the Legislature from doing in behalf of the State what only a sense of gratitude or charity might impel a generous individual to do.

Benefit enjoyed at the expense of another will ordinarily call for compensation. Even where the law does not compel such compensation, justice and equity may still dictate its payment. So we have held in many cases, but in each case where we sustained the recognition by the Legislature of a " moral obligation," injury caused by act of the State or its agents, or arising in the course of service to the State, has been present, or there was benefit conferred upon the State at its request, express or implied, and with expectation of recompense which has been thwarted. (Cf. *Farrington* v. *State*, 248 N. Y. 112, at p. 116.) In no case heretofore has the State granted compensation for benefit enjoyed, though at the expense of another, where the benefit has been given voluntarily, without request from the State and without expectation of compensation from the State or an agency of the State.

Here the State had left to the towns the duty and expense of constructing bridges used in connection with highways. The towns failed to erect the bridge. The Legislature, if it had chosen, might have provided that in the public interest the bridge should be erected at the expense of the State, subject to the provisions of law intended to safeguard the interests of the State. The Legislature did not choose to do so. Then the claimants stepped in and voluntarily built the bridge at their own expense. It is not shown that they had any expectation

that the towns would reimburse them. On the contrary, it fairly appears that the towns were unwilling to incur the expense of constructing the bridge. It is not shown that the claimants expected reimbursement from the State. On the contrary, the legislative policy not to pay for such bridges was embodied in the statutes. The claimants could not have supposed that they were under any compulsion by the State. On the contrary, it appears that they acted for some purpose of their own. We need not speculate as to what that purpose was, though it is fairly inferable that at least the claimant Ausable Chasm Company built the bridge because the bridge would bring more paying visitors to its property on the highway and thus increase the profits they derived through the price of admission. Whatever their purpose, it does not appear that any act of the State caused them to lose the expected benefit from the expense they voluntarily incurred. The Legislature alone has power to determine when the credit or moneys of the State shall be used to promote the public welfare or convenience. It must weigh the importance of competing needs and demands upon the resources of the State. An individual impelled by expectation of personal profit, or by a sense of public spirit or of charity, may step in and provide out of his own resources for a need which the Legislature has neglected. He may thus earn the gratitude of the People of the State, but there can be no moral obligation upon the State to repay him for the voluntary expenditure of moneys to meet a need for which the Legislature has refused to make provision. That is the case here. A different question might arise if the expenditure had been made to meet a danger or need caused by a sudden emergency which the Legislature had not foreseen.

The judgments should be reversed and the claims dismissed, with costs in all courts.

CRANE, Ch. J., O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgments reversed, etc.