SEGLIN CONSTRUCTION COMPANY, INC., and Others, Respondents, Appellants, Impleaded with A. E. NORTON, INC. (Claim No. 19892), Respondent, *v.* THE STATE OF NEW YORK, Appellant, Respondent.

(Claim No. 22029.)

Third Department, January 21, 1937.

*John J. Bennett, Jr., Attorney-General, Henry Epstein, Solicitor General [Leon M. Layden, Second Assistant Attorney-General, of counsel], for the defendant, appellant, respondent.*

*Byrne, Jeram & Casey [William Brennan, Jr., of counsel], for the claimants, respondents, appellants.*

*Benjamin McClung [Charles B. Sullivan of counsel], for A. E. Norton, Inc., claimant, respondent.*

RHODES, J. The claims herein are founded basicly upon matters growing out of a contract made between the State of New York and the Seglin Construction Company, Inc. (hereafter referred to as Seglin Company), for the construction of the State Office Building in the city of Albany, N. Y. The other claimants were subcontractors of said company.

Chapter 5 of the Laws of 1926 created a Commission, to be known as "The State Office Site and Building Commission," for the purpose of procuring a site in the city of Albany for an office building. By chapter 4 of the Laws of 1927, said Commission was authorized to construct an office building for the State upon such site. Pursuant thereto and about February 1, 1927, the Commission, in behalf of the State, entered into said contract with the Seglin Company for the construction of the foundation, steel frame work and exterior of said office building and thereafter, with the approval of the State, the Seglin Company entered into contracts with the above-named claimants, subcontractors and others, for the performance of various portions of the work to be done under the main contract. By the terms of its contract Seglin Company was to complete its contract by September 1, 1928.

It is undisputed that after work of excavating had proceeded for a short time the State concluded that the plans prepared by it for the foundation would not provide for an adequate and proper foundation and, therefore, the State ordered the suspension of further work pending the preparation of further plans and designs for the foundation. The court below has found that the effect was to stop all work on the job until further instructions.

New plans were prepared by the State, involving a radical change in the design of the foundation with vast additional work connected therewith. It is principally because of the damages caused by these changes and the delay incident thereto and for extra work and materials necessitated by the change in design that the claims herein have been made.

An enabling act, chapter 692 of the Laws of 1931, was passed, entitled: " An Act to confer jurisdiction on the Court of Claims to hear, audit and determine certain claims against the State, by contractors, subcontractors and others, arising out of alleged delays, interferences and acts of the State in the construction of the State Office Building at Albany, and to render judgment or judgments therefor."

The first question to be considered arises out of the contention of the State that the enabling act is unconstitutional, in so far as the various subcontractors are concerned. Owing to its length the act is not quoted in full here, but its salient features are that it confers jurisdiction upon the Court of Claims to hear, audit and determine the claims of the Seglin Company and of the subcontractors against the State " for work performed and materials furnished, and for damages alleged to have been sustained by reason of breach of contract upon the part of the State, failure of the State to furnish claimants with the site of the work to enable them to proceed with the construction and progress the same, and by reason of delays, interferences with and interruptions to said construction work caused by the State, its officers and agents, in carrying out [the said contract of the Seglin Company] * * * and the State consents to have the liability, if any, of said contractor to said subcontractors, and the liability of the State to all said claimants determined in one proceeding by said court. * * * and the court may award to and render judgment for the claimant, Seglin Construction Company, Incorporated, in such sum or sums as it shall find to be just and equitable, including therein such damages as shall have been found by the court to be a legal liability of Seglin Construction Company, Incorporated, to any or all of said subcontractors, claimants."

Counsel for the State bases the claim as to unconstitutionality in part upon the fact that the enabling act permits subcontractors to present their claims to the Court of Claims, although the Seglin Company was the only one with whom the State had any contractual relation; also that the act empowers the Court of Claims to hear and determine any controversies existing between the principal contractor and the subcontractors arising out of the construction in question and in case the court finds liability on the part of the Seglin Company to the subcontractors then judgment is permitted to be entered against the State for these amounts. The State argues that ordinarily there is no liability to a subcontractor on the part of the owner or builder for delays, the only liability of the owner of the building being to the main contractor.

It appears also that the above subcontractors, except A. E. Norton, Inc., have executed so-called releases to the Seglin Company discharging it from all claims for the damages herein sought by the subcontractors, such damages being claimed by the subcontractors against the State directly. In consideration of such releases and by the terms thereof, the Seglin Company agreed to present the claim of each said subcontractor " for damages alleged to have been sustained by it at the hands of the State of New York, because of delay in the execution of its contract with Seglin Construction Company, Inc.," and the Seglin Company promised in said releases to demand payment of said claims and to prosecute them to a determination in the Court of Claims if necessary.

The claims of the subcontractors are alleged to be directly against the State for damages for delay caused solely by the act of the State, whereby the subcontractors were prevented from performing their contracts within the time specified thereby. The State claims that the subcontractors, having no contractual rights with the State and having released the Seglin Company from liability, have no claim based upon any legal right as against the State, and that such claims are, therefore, barred by section 9 of article 8 of the State Constitution, which provides that " Neither the credit nor the money of the State shall be given or loaned to or in aid of any association, corporation or private undertaking;" the contention of the State being that the claims of the subcontractors are not founded on justice and equity and are not supported by a moral obligation sufficient to remove them from the ban of said provision of the Constitution.

In support of this point the case of *Ausable Chasm Co.* v. *State of New York* (266 N. Y. 326) is cited as directly applicable and determinative of the question involved. The claim in that case, however, was for the amounts expended by the claimants for the

construction of a bridge over the Ausable river, said bridge forming a connecting link in a State highway. The bridge had been built by private individuals to suit their own purposes without any request or inducement whatever on the part of the State or any of its officials, and it was held that no liability existed therefor against the State in favor of said individuals.

The situation is vastly different in the matter now before us. (See *Williamsburgh Savings Bank* v. *State of New York*, 243 N. Y. 231; *Wheeler* v. *State of New York*, 190 id. 406; *O'Hara* v. *State of New York*, 112 id. 146.) Here the contractors were compelled to stop work under their contracts by the compulsion of the State and its officials, and the damages to the claimants were the direct result. It may be difficult to classify with accuracy the nature of these claims, whether they are to be regarded as *ex contractu, ex delicto, quasi* contracts, implied contracts, actions on the case or trespass on the case; but however denominated, it is clear that damage has resulted to the claimants solely by the act of the State which has interfered with the performance of the contracts of the claimants. The claims constitute a legal liability on the part of the State, having a basis far stronger than the usually accepted obligations of abstract justice, equity and morality.

This is not the case of a contractor encountering unexpected difficulties and obstacles in carrying out his contract according to its plans and specifications; here the contractor was not permitted to perform his original contract and the delay and damage resulted from the action of the State in ordering suspension of the work while totally different plans were prepared by officials of the State, which, after delay, the contractor was ordered to follow. (See *Village of Port Jervis* v. *First National Bank*, 96 N. Y. 550; *Mayor, etc.,* v. *Brady*, 151 id. 611; *Danolds* v. *State of New York*, 89 id. 36; *People ex rel. Wells & Newton Co.* v. *Craig*, 232 id. 125; *Peterson* v. *City of New York*, 205 id. 323; *Del Genovese* v. *Third Ave. R. R. Co.*, 13 App. Div. 412; affd., 162 N. Y. 614; *Anderson* v. *Hayes Const. Co.*, 243 id. 140.)

The remaining objection as to the constitutionality of the enabling act is raised by the State against all of the said subcontractors and is to the effect that the act permits the litigation of the claims of the subcontractors before the Court of Claims to determine the liability of the Seglin Company to each of its subcontractors. The State argues that the enabling act confers upon the Court of Claims the authority to determine controversies between individuals, and that by the act these claims were withdrawn from the jurisdiction of the Supreme Court. The act, however, is permissive, and in this connection it appears that one of the subcontractors,

the Hughes-Keenan Co., Inc., has litigated its claim against the Seglin Company in the Supreme Court and recovered judgment for damages which has been affirmed by this court (*Hughes-Keenan Co.* v. *Seglin Construction Co., Inc.*, 235 App. Div. 750, 877).

The act in no way prohibits the litigation of these claims between the contractor and the subcontractors in the Supreme Court and does not attempt to take away from the Supreme Court such jurisdiction. No decision or constitutional provision is cited which indicates any limitation upon the power of the Legislature to create a statutory tribunal for the purpose of permitting claims between individuals to be litigated before it in case the parties should so desire. That in effect is what the Legislature has done here. It has not created a new court, but it has enlarged the jurisdiction of the Court of Claims so as to permit the parties to submit all their differences to it for determination, including claims against each other. (See *Matter of Berkovitz* v. *Arbib & Houlberg*, 230 N. Y. 261; *Barone* v. *Ætna Life Ins. Co.*, 260 id. 410; *Anderson* v. *Reilly*, 66 id. 189.)

Section 23 of article 6 of the State Constitution empowers the Legislature to create any board or court with jurisdiction to hear or audit and determine claims against the State, and section 20 of the Court of Claims Act authorizes the Court of Claims to bring in parties when necessary to a complete determination of a controversy or determination of a liability and to consolidate claims or actions and to order interpleader " in the same manner and to like extent and with like effect  *  *  *  as is conferrred upon other courts."

We, therefore, conclude that the enabling act is constitutional and pass to a consideration of the respective claims concerning which question is raised here.

The briefs of counsel have been of great assistance in the examination of the record as to the disputed claims involved here.

The court below made a decision in favor of the claimants in the sum of $211,511.80, with interest, amounting in all to $293,567.69, and judgment therefor was entered which impressed thereon the liens of the subcontractors whose claims were allowed by the decision and judgment.

The State claims that the claims of certain subcontractors were properly dismissed below; that the awards as to certain others are adequate and as to certain others are excessive. The claimants argue that certain of the claims of subcontractors were improperly dismissed; that the awards to certain other claimants were adequate and that as to certain others the award should be increased.

The contract of the Seglin Company with the State was dated February 1, 1927, and was to be completed by September 1, 1928. It covered in general excavation and foundation work, steel frame work and stone and granite work for the walls of the thirty-four-story building. Claimants contend that Seglin Company had planned to commence work on February 9, 1927, and to complete the job on November fifteenth of the same year, and in furtherance thereof had prepared a so-called work progress schedule indicating how it proposed to progress the various operations. The court below has found that the schedule was not feasible and that the work could not have been completed by November 15, 1927.

As above pointed out and again emphasized, the delay did not arise because of conditions encountered in the carrying out of the plans and specifications provided for in the original contract; the delay and damage occurred because the contractor was not permitted to proceed according to the original contract, plans and specifications, but was forced to stop work while the original plans were being changed and entirely different plans were being formulated, which latter plans the contractor was directed to follow, after such ensuing delay and resulting damage.

The State does not dispute the fact that the contractor was delayed by the acts of officers and employees of the State, but contends that the delays so occasioned were not as great as claimed by the claimants. It is the question as to the extent of the delay and the effect of changes of plan and design which forms the basis for the disputes as to claims involved. It is self-evident that the progress work on a project of this magnitude is dependent upon many contingencies and that the delay which may have been caused to the main contractor would not necessarily represent the delay caused to subcontractors who were materialmen engaged in fabricating steel and stone work and other materials. The extent of the delay and the extent of the damage resulting thereby were questions of fact sharply controverted and depending upon a mass of conflicting testimony. It would serve no useful purpose and would unduly extend the length of this opinion to discuss each of the controverted claims.

There are, however, four items disallowed below which we think should have been allowed.

1. Six thousand dollars paid by the Seglin Company to the Fort Orange Club for damages resulting from undermining its foundations. The evidence justifies a finding that the damage would not have occurred had there been no change in the plans; the change required greater excavation and the removal of a supporting bank of earth. The Seglin Company paid $6,000, July 31, 1929, in satis-

faction of this claim made against it by the Fort Orange Club. The Seglin Company is entitled to reimbursement, with interest from July 31, 1929. The dismissal of this item should be reversed and judgment granted therefor in favor of the claimant.

2. Archer Stone Setting Company, Inc.

3. Perry Brothers Granite Company.

4. Nellie M. Carroll, assignee of the Roesch Corporation.

Claims made on behalf of these subcontractors have been disallowed; each seems to be meritorious for some amount to be determined after a new trial. The dismissal as to each should be reversed and a new trial granted.

In other respects, the judgment should be affirmed, with costs.

HILL, P. J., McNAMEE and HEFFERNAN, JJ., concur; CRAPSER, J., dissents to modification and votes to affirm the judgment appealed from.

Judgment modified on the law and facts by including therein $6,000, with interest thereon from July 31, 1929, on account of damages paid to the Fort Orange Club, and as so modified affirmed.

Judgment reversed on the law and facts as to the dismissal of the claim assigned by Archer Stone Setting Company, Inc., Perry Brothers Granite Company and Nellie M. Carroll, doing business as the Paid System, assignee of the Roesch Corporation.

The court reverses findings 96 and 97 pertaining to item 10-e of the decision and in place thereof finds that the foundations of the Fort Orange Club barber shop and porte cochere became unsafe to sustain the superstructure through no fault of the claimant but solely because the original plans had been improperly prepared and changes were necessary and that the damages resulted because of the delay and because of the work made necessary by the new plans.

The court further reverses, in connection with the claim assigned by the Archer Stone Setting Company, Inc., findings numbered 135, 138, 139, 142, 144, 145, 146 and 147; and in connection with the claim assigned by Perry Brothers Granite Company the court reverses findings numbered 227, 228, 229, 230, 231, 232, 235, 237; in connection with the claim filed by Roesch Corporation, later assigned to Nellie M. Carroll, doing business as the Paid System, the court reverses findings numbered 300, 301, 302 and 303.