JOHN C. AGNEW, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 23684.)

JOHN C. AGNEW, JR., an Infant, by JOHN C. AGNEW, His Guardian ad Litem, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 23685.)

Court of Claims, March 14, 1938.

*Feinberg & Jerry,* for the claimants.

*John J. Bennett, Jr., Attorney-General [E. E. Brogan* and *Leon M. Layden, Assistant Attorneys-General,* of counsel], for the defendant.

MURPHY, J. On Saturday morning, January 26, 1929, the Plattsburg State Normal School at Plattsburg, N. Y., was destroyed by fire. At the time the fire was discovered John C. Agnew, Jr., the infant claimant, was in the school building. He was a regular student of the school, but Saturday was not a regularly appointed school day and he was present as a member or a prospective member of a school band and was awaiting a lesson in music from Professor Street, the school's director in music.

In an endeavor to leave the building and escape the fire, he jumped or fell from a window on the southerly end of the building and sustained injuries, damage for which these claims are filed.

At a term of this court held in December, 1930, these claimants were before this court under a special act of the Legislature (Laws of 1930, chap. 699).

That act conferred jurisdiction upon the court to hear, audit and determine the claim of the infant John G. Agnew, Jr., to recover damages for personal injuries sustained by him, and the claim of John C. Agnew, the father of the infant, to recover damages sustained by him by reason of the injuries sustained by his infant son.

The trial of the claims had at said term resulted in a judgment October 21, 1931, dismissing both claims on the merits.

No appeal was taken from the judgments and the judgments are of record in this court.

Subsequently, and at the 1934 session of the Legislature, another, the present, special act was passed (Laws of 1934. chap. 780) conferring jurisdiction upon this court to hear, audit and determine the above-entitled claims.

A comparison of the two acts manifests an intention upon the part of the Legislature to broaden by the later act the basis of the State's liability and a purpose to remove the legal objections that went to defeat the claimants under the prior act.

The special act of 1930 put upon the claimants the burden of establishing the legal status of the infant claimant upon the premises; " that he was lawfully present; " therefore, that he was present by license or invitation; that he was not a trespasser.

In disposing of the claim under this special act this court found and decided that the infant claimant was not present by invitation or license; consequently that he was a trespasser.

Clearly the act of 1934 is designed to overcome this decision and to relieve the claimants from this burden, and as it is now framed it requires the claimants, for the purpose of establishing that the infant claimant was " lawfully present," to prove only that he was present with the knowledge and permission of the principal of the school and thus and with such proof to remove the infant claimant from the category of a trespasser and give him the legal status of an invitee or licensee.

The legal effect of this change in the act relative to the infant claimant's status is to change the degree or measure of duty or care that the State would be required to exercise for the safety and protection of the infant claimant. An analysis of the two acts compels the conclusion that this was the legislative intent.

Under the act of 1930 and the interpretation given it in this court actionable negligence could arise only from a wanton act or active negligence; under the act of 1934 failure to exercise ordinary care and prudence would constitute actionable negligence.

Two questions directed to the constitutionality of the present act are presented by the learned Assistant Attorneys-General. They urge, *first*, that the present act is unconstitutional because in result it amounts to a gift or gratuity to the claimant, and *second*, that the act in view of the judgment of dismissal upon the merits following the trial of the claims under the prior act is unconstitutional, for the reason that the previous determination is *res judicata* and the action of the Legislature in passing the present act, therefore, constituted a usurpation of judicial power.

It would seem that neither position can be sustained.

As earlier indicated, the main difference between the act of 1930 and the act of 1934 is that the act of 1934 broadens the basis of the State's liability.

The act of 1934 does nothing more than assume liability to the claimants and permits compensation to them for the damages sustained by them provided stated facts are made to appear from which the legal conclusion can be drawn that a moral or equitable obligation to the claimants exists.

This legislation does not offend against article 3, section 19, of the Constitution as that article and section prohibit the Legis-

lature from auditing or allowing any private claim or account against the State, nor against article 7, section 1, or article 8, section 9, as those articles and sections prohibit the Legislature from in any manner giving or loaning the credit or money of the State to or in aid of any individual, association, corporation or private undertaking.

The powers of the Legislature to recognize a claim that is founded in equity and justice are extremely broad and unless its act may conflict with the foregoing stated provisions of the Constitution it cannot be successfully challenged.

The cases treating with the power of the Legislature to recognize private claims are numerous and the law in this respect would appear to be well defined.

It is well and simply expressed in *Babcock* v. *State* (190 App. Div. 147, at p. 156), where the court says: " The Legislature, although it may not make a gift of the moneys of the State, nor itself audit or allow a private claim against the State, may yet recognize and legalize private claims, which, though unenforcible through the application of legal principles, are yet founded upon equity and justice, and it may empower the Court of Claims to audit and allow them."

The extent of the power of the Legislature is very clearly stated in *Ausable Chasm Co.* v. *State* (266 N. Y. 326), and the court in its opinion says: " The Legislature has a wide discretion as to the conditions upon which it will recognize a claim which is founded in equity and justice."

The whole subject of the power of the Legislature relative to private claims is so well considered by Judge LEHMAN in his opinion in the *Ausable Chasm* case and the related authorities so well discussed that it seems sufficient for the purposes of this case in so far as that question is here involved to call attention to that opinion.

The conclusion is reached that the act of 1934 is not in conflict with the provisions of the Constitution under consideration; that by this act the Legislature has simply granted a right of compensation to the claimants if the facts set forth in the act are proven and then there is an assumption of liability upon the part of the State arising in justice and equity.

The claim that the judgment of this court on the trial of the claim under the act of 1930 is *res judicata* would not appear to be sustainable. If this might be a judgment in an action between individuals there could be little question about the soundness of the argument of the Assistant Attorneys-General or the correctness of their position.

Such legislation it could rightly be said would result in destroying rights vested by a judgment and would clearly amount to a usurpation of judicial power.

This, however, is not the problem. This claim or controversy is not between individuals. The State itself is a party, and this circumstance creates the difference. By the act of 1934 the State has waived the effect of the prior judgment and its right or power in this would seem to be beyond contest.

Research has not developed a similar situation arising in this State. But the identical question is found in *Calkins* v. *State* (21 Wis. 501), and the part of the court's opinion in that case that disposes of the question reads as follows: " The point was taken by the Attorney-General, that it was not competent for the Legislature thus to interfere and authorize him to set aside a final judgment of this court, and grant a new trial. If the cause were one between individuals, we should clearly be of the opinion that this objection must prevail. For we have held in the case of *Davis* v. *President & Trustees of Menasha* (21 Wis. 491) that when parties have exhausted all their legal remedies, and when their rights have been definitely settled and determined by final judgment, the controversy being closed under the existing laws, the Legislature cannot constitutionally pass an act granting a new trial in such a case; that such legislation under such circumstances has the effect to destroy the rights of parties vested under the judgment; and, furthermore, is the exercise of judicial power, not lodged with the law-making power under our Constitution. But none of these objections can apply here, for the very obvious reason that the State is a party, and certainly can waive any right or advantage which it has secured by the judgment already rendered. The Legislature, on behalf of the State, has in effect consented that the judgment be set aside, and that a further trial of the issues may be had. We know of no principle of constitutional law which forbids the Legislature from doing this. We are considering the question of power merely, not the wisdom or propriety of such enactments. It is impossible to say that the Legislature has violated any provisions of the Constitution in passing this law granting a new trial where the State is the sole defendant. If any authority were necessary upon so plain a proposition, it will be found in the case of *People* v. *Frisbie*, 26 Cal. 135, where a similar point was decided."

On this proposition it must be decided that the Legislature acting within its power waived the advantage of the prior judgment and the plea of *res judicata* is not available.

The claim on its merits remains for consideration.

Under the act in order to establish liability the claimants were called upon to prove:

I. That the infant claimant was present in the school as a member or a prospective member of a band consisting of students of the practice department of the school, of which department he was a student engaged in taking or preparing to take a music lesson.

II. That he was present with the knowledge and permission of the principal of the school.

III. That he was injured in escaping from a fire by reason of falling or jumping from a window at the southerly end of the building.

IV. That he, the infant claimant, was using reasonable care.

V. That a principal or contributing cause of which was — the general condition of the building — or — the lack of fire escapes — or — other additional means of escape.

VI. That the State failed to exercise ordinary care in constructing, equipping and maintaining said building.

That the proof is sufficient to sustain a finding that the infant claimant was present in the school as a member or a prospective member of a band consisting of students of the practice department of the school, of which department he was a student and engaged in taking or preparing to take a music lesson, if not conceded, is established by uncontradicted evidence. The fact that the infant claimant was present with the knowledge and permission of the principal of the school, that he was injured, and that his injuries were sustained in escaping from the fire by reason of falling or jumping from a window at the southerly end of the building is likewise, if not conceded, established by uncontradicted evidence.

With these essential facts established there is left for consideration only the question of contributory negligence upon the part of the infant claimant and the further question as to whether or not the general condition of the building, or the lack of fire escapes, or other additional means of escape, or the failure of the State to exercise ordinary care in constructing, equipping and maintaining said building was a principal or contributing cause to the injuries sustained by the infant claimant.

That the infant claimant exercised reasonable care in the circumstances would appear from the evidence to be beyond dispute. The fire caused a perilous situation and the evidence shows the boy's conduct to be without fault. Before and at the time the fire was discovered he was in the care of Mr. Street, his instructor. After the fire was discovered, at the direction of Mr. Street he went to the south door of the building, he tried the door and

not able to open it he returned to Mr. Street, joined the group that Mr. Street had with him and led by Mr. Street went with the group to the widow at the southerly end of the building where Mr. Street discharged all the group, except the infant claimant, safely into the street. These are the facts as they relate to the conduct of the infant claimant, and it must be concluded that he acted with intelligence, courage and with all due care.

The only remaining question is will the evidence support a finding that " the general condition of the building, or the lack of fire escapes, or other additional means of escape, or the failure of the State to exercise ordinary care in constructing, equipping and maintaining the building," was a principal or contributing cause of the injuries received by the infant claimant within the requirement of the statute.

The answer to this question must be found in the history of the building, its construction, its equipment and its maintenance. The main building was constructed in 1890 and some eight or nine years later an annex on the south end was added. The school building was of brick 200 feet by 100 feet, of three stories and basement; the basement on the south was at the ground level; the annex was a four-story and basement structure; the floors, ceilings and side walls of the buildings were wooden, the main partitions were brick, the stairs were not inclosed. There were no fire escapes on the building, there were no fire doors, automatic fire alarm or sprinkler system in the building. There were some fire extinguishers, but the standpipes of these were often shut off.

The building faced east, fronting on Beekman street, it had three entrances on Beekman street, the main one to the north and one to the south. The basement windows were barred or screened. There is no evidence that the buildings were ever improved, altered or repaired, and in the sense that they wholly lacked present day improvements and safety requirements, it can be justly said that they were antiquated.

While it might reasonably be claimed that the general construction of the building and the above enumerated factors, with others that it seems unnecessary to state, combined to create a seriously hazardous condition, still there might remain some doubt as to whether or not it could safely be said that they furnished the principal or contributing causes.

Firm ground will be found in the condition of the southerly exit through which at the direction of Mr. Street exit was attempted and, if need, to this might be added the absence of fire doors.

This exit consisted of a pair of heavy softwood doors, veneered with ash. Each door was about three and one-half feet by seven and one-half feet; the lower half was of wood, the upper half of double thick glass. One of these doors was fastened top and bottom with bolts, it was, therefore, fixed; the other door had a heavy check and opened outward by turning a knob and pushing. Both doors were identical in appearance, each was furnished with a knob, but there was no sign or mark indicating which was the fixed door or which was the operating one. They were not furnished with panic bolts.

It was to this exit that Mr. Street sent the infant claimant and some other boys in the endeavor to escape. That this door was tried and that it failed to operate is beyond fair question. Why it failed to open, whether because it was locked or because of some defect, is not for the purpose of the question here presented particularly important.

Sight cannot be lost of the fact that the boys were acting under the direction of Mr. Street. They were sent by him to this door and when they came back to him after their attempt to use the door had failed, he was satisfied that escape could not be made by that door and he then took the only means left for discharging his group, all other ways then being shut off and impossible because of the spread of the fire.

Had this door operated, safe exit could have been made and the injuries to the infant claimant would have been averted. It follows, therefore, that the condition of this door was a direct contributing cause of the injuries sustained by the infant claimant.

If a further direct contributing cause should be necessary, it can be found in the failure to provide fire doors. Such doors doubtless would have stayed the spread of the fire sufficiently at least to make safe escape possible.

It is not said that the provisions of article 16 of the Education Law as they relate to common schools, apply to normal schools (Art. 32). These provisions do, however, suggest a standard of care for construction and they furnish a very reasonable guide for the investigation of the question of reasonable care for construction, equipment and maintenance.

The infant claimant should have an award for the injuries sustained by him. His principal injury was a fracture of the skull and claim is made that the fracture caused a disturbance of the pituitary gland.

That this gland disturbance existed is not denied, but that it resulted from the injury is sharply questioned. The proof in this respect is not convincing and the safer conclusion is that prior

to the injury the condition existed and the injury caused an acceleration of the condition.

The father of the infant is entitled to an award that will compensate him for the damage he sustained by reason of the infant claimant's injuries. Certain expenditure made by the father and doubtless well made cannot be charged against the State.

Such items of expenditure as cost of heating, transportation of the claimant by reason of change of residence, sums paid an attendant to claimant's two sons and rent for a cottage are not items that can be said to be reasonable and necessary within the damage rule and are, therefore, not assessable.

An award in accordance herewith should be made the claimants.

GREENBERG, J., concurs.