Alexander Del Giorno, J.
The State has moved for an order dismissing the above-entitled claim on the following grounds: (1) that the court lacks jurisdiction of the subject matter, (2) the *160 claim fails to state a cause of action, (3) the claim fails to state facts sufficient to allow a recovery, and (4) the facts of the claim were the subject of a prior litigation which was decided adversely to claimants and are, therefore, res judicata.
In 1955 the State undertook the reconstruction of Route 17-B in Sullivan County pursuant to State highway projects designated as State Highway 890 Monticello-Mongaup Valley and State Highway 986 Fosterdale-Mongaup Valley. As part of this project, appropriation maps were prepared, filed and served upon property owners along the highway. In preparing these maps, as well as the contract plans and specifications, the Department of Public Works assumed the width of Route 17-B to be three rods, which was the area actually utilized for highway purposes prior to the reconstruction. ' Moreover, a number of the adjoining land owners were paid by the State for land appropriated on the basis of this assumption. Others of the adjoining owners, however, including the claimants herein, chose not to accept the proffered payment, but to file claims for the permanent appropriation of their lands.
Upon the trial of the claimants’ action, the State, for the first time, introduced evidence that its right of way was six rods rather than the previously represented width of three rods. The bases for this newly taken stance were ancient public records dating back to 1801 which, the State contended, showed that the highway had originally been laid out pursuant to statute as the Newburgh and Cochecton Turnpike, having a width of ,six rods west of Monticello. The Court of Claims rejected this argument and made an award to claimants. (Frankfater v. State of New York, 32 Misc 2d 130 [1962].) On appeal, the Appellate Division accepted the evidence which had been advanced by the State regarding the width of the highway and reversed with directions for a new trial. (Frankfater v. State of New York, 17 A D 2d 515, [3d Dept., 1962].) Upon the retrial no additional or offsetting proof was produced and the claim was ultimately dismissed. No further appeal was taken, and it became judicially established that the State had title to a six-rod right of way along Route 17-B. As a result of this determination, the present claimants, and others similarly situated, were left without a legal cause of action.
Thereafter, however, in 1966, the Legislature passed an enabling act (L. 1966, ch. 696) conferring jurisdiction upon the Court of Claims to hear and determine any claim to recover damages for land appropriated and used for the reconstruction of Route 17-B lying within the six-rod right of way, but without the three-rod right of way. The present claim was timely *161 filed pursuant to the provisions of this act which became effective June 28,1966, and which is herewith set forth in full.
“ Section 1. Jurisdiction is hereby conferred upon the court of claims to hear, audit and determine the claims against the state of New York of persons, firms and corporations, their heirs and assigns, who have or had an interest in lands adjacent to New York state highway 17B in Sullivan county before its reconstruction under state highway projects 890 Montieello-Mongaup Valley and 986 Fosterdale-Mongaup Valley, New York, and to render judgment thereon as claims founded in right and justice or in law and equity against the state of New York and in right and justice presently payable thereby.
“ § 2. In hearing and determining said claims the court of claims is hereby authorized to consider, among other things whether or not:
“ (a) the state of New York traces its title to route 17B to the Newburgh and Cochecton Turnpike Company which was chartered in 1801 (L. 1801, ch. 36).
“ (b) the Newburgh and Cochecton Turnpike Company abandoned its property no earlier than 1865 and title to its property passed to the state of New York pursuant to the legislative enactment of 1838 (L. 1838, ch. 262).
“ (c) prior to 1962 the maps prepared and filed by the state of New York showed route 17B to be a New York state highway three rods in width.
“ (d) the state of New York negotiated, settled and paid compensation for claims for property used in the reconstruction of route 17B under projects S.H. 890 and S.H. 986 between the village of Monticello and the hamlet of White Lake before December 28, 1962 on the basis that route 17B was three rods in width.
“(e) the supreme court on December 28, 1962 determined that in the projects S.H. 890 and S.H. 986 area the Newburgh and Cochecton Turnpike Company had acquired a six rod right of way under the charter of 1801 and that title thereto vested in the state by virtue of the 1838 legislative enactment.
“ (f) the statutes in such eases made and provided afforded and afford no means of correcting in accordance with the decision of the supreme court the determination that the title to the property lying within the six rod right of way as acquired by the Newburgh and Cochecton Turnpike Company under the charter of 1801 but lying without the three rod right of way as indicated on the state maps prepared and filed since 1911 vests and vested in the state and not in the adjacent property owners and that the adjacent property owners have no claim for *162 damages for land used in the reconstruction lying within the six rod right of way.
“ (g) the property owners adjacent to route 17B bought, sold and improved their property in reliance upon the representations set forth in the maps prepared and filed by the state showing route 17B to be three rods in width.
“ § 3. If the court finds that the claims of any such persons, firms and corporations, or any of them, were founded in right and justice or in law and equity against the state of New York, and are in right and justice presently payable thereby, the state shall be deemed to have been liable therefor and they shall constitute legal and valid claims against the state and the court may award and render judgments for the claimants as shall be just and equitable, notwithstanding the lapse of time since any of such claim or claims or parts thereof accrued or the failure to do any act in relation to the presentation of such claims or any of them within the time prescribed by law, but no such award shall be made or judgment rendered hereunder against the state unless such claim shall be filed with the court of claims within ninety days from the passing of this act, nor if such claim, as between citizens of this state, would be barred ■by lapse of time.
“ § 4. This act shall take effect immediately.”
That the Legislature has the power to pass an enabling act sanctioning the allowance of a private claim is so well settled as to be beyond dispute. (Williamsburgh Sav. Bank v. State of New York, 243 N. Y. 231 [1926]; New York State Thruway Auth. v. State of New York, 50 Misc 2d 957 [Ct. of Claims, 1966], affd. 28 A D 2d 607 [3d Dept., 1967].) However, in the instant case the State contends that the Legislature exceeded the limits of this power and the act violates section 8 of article VII of the Constitution which provides that neither the money nor credit of the State shall be given or loaned to or in aid of any individual, or public or private corporation or association, or private undertaking.
This prohibition does not prevent the Legislature from recognizing claims founded on equity and justice. (Ausable Chasm Co. v. State of New York, 266 N. Y. 326 [1935].) 11 While the Legislature may not sanction a gift of public moneys for private purposes, it may in certain instances acknowledge the justice of a private claim against the State and provide for its audit and allowance by the Court of Claims, providing that the claim appears to the judicial mind and conscience to belong to a class of claims concerning which in the exercise of a wide discretion, the Legislature might reasonably .say are founded *163 in equity and justice and involve moral obligations upon the part of the State which the State should satisfy.” (Campbell v. State of New York, 186 Misc. 586, 589 [Ct. of Claims, 1946].) However, the decision by the Legislature that certain facts create a moral obligation is not conclusive. The courts must still determine whether its judgment was correct. Thus, the question to be decided is whether the facts in this case establish a claim founded in right and justice or in law and equity and is in right and justice payable thereby.
Since the inception of this road in 1801, no more than three rods had ever been claimed or used by the State of New York or its predecessors in interest. In 1911, when the State assumed control of the road as a State highway, both the State and the adjacent property owners were under the impression that the State claimed ownership - of only a three-rod right of way. In fact, in that same year, the State prepared and filed a map showing the width of the road to be three rods. In reliance upon this original assumption and subsequent active representation, the adjacent property owners had, over the course of more than 150 years, improved and beautified their properties. To allow the taking and removing of these improvements and century-old indicia of ownership without compensation would, we believe, constitute a moral injustice.
Further, the State has already paid many of the adjacent property owners for land used for reconstruction purposes between the three- and six-rod right of way. However, these payments were made prior to the 1962 decision of the Appellate Division vesting title to six rods in the State. Under circumstances such as that, where some were paid and others were not, it would seem that there exists a clear moral obligation to recompense all, since all suffered like damage. The Constitution does not prohibit the Legislature from doing in behalf of the State what a fine sense of justice and equity would dictate to an honorable individual. (Ausable Chasm Co. v. State of New York, 266 N. Y. 326, supra.)
The court finds chapter 696 of the Laws of 1966 constitutional and, further, finds that the facts contained therein created a moral obligation on the part of the State founded in right and justice. Accordingly, that part of the State’s motion to dismiss for lack of jurisdiction is denied.
We turn now to the remaining arguments put forward by the State as grounds for dismissal of the claim. The first of these is that the claim fails to state a cause of action. The claim as presented herein is identical to the original claim filed in 1958, with the exception of paragraph six thereof which alleges, *164 in substance, that the claim has been timely filed pursuant to the provisions of chapter 696 of the Laws of 1966, conferring jurisdiction on this court to hear claims concerning property appropriated along Route 17-B.
The special act provides that if the court finds the facts to be substantially as set forth therein the resulting damages shall constitute a valid claim against the State. We have found the facts to be as stated, and have concluded that the act authorizing this court to hear, audit and determine this claim is a proper exercise of legislative power not prohibited by the Constitution of the State of New York. We find, therefore, that the claim, as filed, alleges a valid cause of action.
The State further contends, however, that even if the enabling act be construed as allowing a cause of action, the claim must, nonetheless, be dismissed for failure to state facts sufficient to allow a recovery. The State argues that if the statute recognizes a claim, it must of necessity be one sounding in tort, namely, misrepresentation. Accordingly, the argument is pressed that the essential elements necessary to plead such a cause of action, i.e., representation, intent and reliance, are lacking in the present claim. Whatever the merits of this argument in the area of torts, the court does not believe that such a contention has any merit when considered in relation to this motion. We are here dealing with a special act passed by the Legislature, which has as its basis the premise that a moral obligation exists on the part of the State of New York which, in the interests of right and justice, should be discharged. Under such circumstances, it is difficult to imagine that the Legislature, in passing this act, intended to include therein the procedural pitfall suggested by the State. A review of the legislative background of chapter 696 substantiates the court’s view that the Legislature was attempting solely to allow the claimants herein, and others in like position, to bring on a claim for damages as a result of the appropriation of this property by the State. The purpose was not to constrain claimants to prove a misrepresentation on the part of the State, but merely to allow a recovery for damages sustained as a result of the reconstruction of Route 17-B.
We reach now the final ground asserted by the State in support of its motion to dismiss — the doctrine of res judicata. The State here takes the position that the facts alleged in this claim were the subject of a prior litigation which was resolved against the claimants and are, therefore, res judicata. However, this argument blinks the fact that subsequent to that prior deter *165 mination an enabling act was passed by the Legislature. The prior claim was heard and decided on a purely legal basis, whereas the present action is founded securely upon a “ moral obligation. ” Thus, the issues to be decided are entirely disparate and, in order for a party to be entitled to avail itself of the doctrine of res judicata, it is essential that complete identity of issues be present. If they are not, as in the present case, the doctrine may not be used. (B. R. De Witt, Inc. v. Hall, 19 N Y 2d 141 [1967].) The motion to dismiss is denied in its entirety.