Ronald E. Coleman, J.
Claimant, who took the oath of office as a delegate to the Constitutional Convention on July 17, 1967, filed a claim for the balance allegedly owed to him between the sum of $6,135.84 that he was paid for the 72 days that he worked and the salary of $15,000 for delegates who worked the 176 days the Convention was in session. What he now claims is that he is entitled to the full pay of $15,000 and nothing less regardless of the fact that he neither was a delegate nor discharged the duties of a delegate for more than 72 out of 176 days. In spite of his assertion that he is entitled to $15,000 and nothing less, he made no offer to return the $6,135.84 already paid to him. The State made a motion to dismiss the claim on the grounds that the court lacked jurisdiction and the claim failed to state a cause of action. Claimant by cross motion asked summary judgment.
Following the general election held on November 8, 1966, one Santangelo received a certificate from the local Board of Elections that he was the duly elected delegate in the Thirty-third Senate District in Bronx County. Thereafter he took the oath of office, was seated, carried out the duties of a delegate and was paid the same as the other delegates during the period that he served. On January 4, 1967, the claimant, who had been a rival candidate, stated proceedings for a recanvass of the votes and it ultimately was determined that there had been a tie vote. (Matter of Rice v. Power, 19 N Y 2d 106, 474).
As a result, the Constitutional Convention by Resolution No. 45 dated May 31, 1967 petitioned the Governor to call a special election in the Thirty-third Senate District. The election was held on July 11, 1967 and the claimant was thereafter certified as the winner by the local Board of Elections. On July 17,1967 he took the oath of office and commenced for the first time his duties as a delegate which he discharged until the work of the Convention was completed on September 26, 1967. He then served 72 days out of a total of 176 days during which the Convention was in session. The salary of $15,000 for 176 days mathematically amounted to $85.22 a day and he was paid at the rate of $85.22 a day for 72 days or $6,135.84. Claimant now contends that the Comptroller should have paid him $15,000 and his claim is that he had a contract for that amount which entitles him to recover the balance on his claim here or that the Comptroller is somehow tortiously withholding this balance which should be recovered in this claim.
*966 The purpose of the Constitutional Convention of course was to redraft the organic law of the State. Such action is a most vital and extraordinary function of the government and those persons to whose care it is entrusted are extraordinary public officers to whom provisions of law otherwise applicable to public officers do not apply. However, it cannot be argued that the provisions of the Constitution in effect at the time of the Convention did not apply to the affairs of the delegates as well as to the conduct of the Convention itself.
The Constitution (art. XIX, § 2) contains the provisions dealing with the Convention. There is very little authority on the question raised here as evidenced by the briefs submitted by the respective parties and our independent research. The Constitution provides that “ Every delegate shall receive for his services the same compensation as shall' then be annually payable to the members of the assembly ”, here $15,000 per annum (Legislative Law, § 5). Neither the Constitution nor the Buies of the 1967 Constitutional Convention adopted pursuant to section 2 of article XIX of the Constitution make any further provision concerning the manner in which the payment is to be made. Section 5 of the Legislative Law provides the manner in which members of the Assembly are to be paid, but again does not shed any further light on the question involved herein.
Claimant took the oath of office on July 17 and from that day on was paid at the rate of $75 a day until August 30, 1967 the same as all the other delegates. For the period of August 31 to September 13, 1967 he received $825, the same as the other delegates, which was the amount of salary payment to bring the delegates’ salary to the aggregate amount of $12,000. For the period of September 14 to September 25, 1967 he received the amount of $1,935.84 to complete his salary payments based on the rate of $85.22 for the time served. Claimant did not on the final payment receive, as apparently did all the other delegates, the sum of $3,000 which was the balance remaining payable on their annual salary of $15,000 (Legislative Law, § 5). On what authority this was done we do not know aside from a reference to some communications with the Comptroller. However, it does mathematically work out to $85.22 a day for all the delegates, including the claimant, for the days served by them.
As the claim here is predicated on the failure of the Comptroller to pay the full salary, we now consider the duties of the Comptroller prescribed by the Constitution which must be said to be binding on the delegates to the Constitutional Convention in 1967. Section 1 of article V provides in part that ‘ The comp *967 troller shall be required: (1) To audit all vouchers before payment in all official accounts * * * and (3) to prescribe such methods of accounting as are necessary for the performance of the foregoing duties.” Pursuant to this authority the Comptroller has made rules concerning payrolls. (See NYCRR, tit. 2, Audit and Control, ch. I, pt. 3). Rule 3.6 provides that notification of appointments must be furnished to the Comptroller, and this presumably was complied with in respect to the delegates to the Constitutional Convention. Under the rules of the Convention and the Constitution, the Convention was the sole judge of the election, returns and qualifications of delegates elected as a result of death, resignation or other causes. (Rules of 1967 N. Y. Const. Conv., rule VIII). As stated in the Resolution of the Constitutional Convention, Resolution No. 45, “ The Convention [had] the power to seat as a member a person elected without a certificate, just as it might refuse to seat as a member a person who [had] a certificate (Odegard v. Olson, 264 Minn. 439, 119 N . W. 2d 717; Keogh v. Horner, 8 F. Supp. 933).” (1967 N. Y. Const. Conv. Record & Index [Legis. Index Co., 1967], p. 269). The claimant then, even in spite of his apparent election, could not have assumed his duties until he was permitted to take the oath by the Convention. After he took the oath, the Comptroller was notified of the fact that he was discharging his duties as a delegate and it was then that he became entitled to be paid for services rendered.
Rule 3.4 of the Comptroller deals with the certification of payrolls. The President of the Constitutional Convention was the one who certified the payroll and in like manner as all other payrolls it certified the amounts payable to the respective delegates. The President would have done so under the provisions of the Constitution, Rules of the Convention and the Comptroller. Under the autonomy given to the Convention, this was a matter for the Convention that the Comptroller or the courts would hesitate to interfere with except if it were in violation of the Constitution. No claim was made that the Comptroller did not pay to the claimant the amounts as so certified to bim by the Convention. While the claim was made that the Comptroller was asked and did give an opinion which was followed, the Convention was not bound by the opinion as given. Had the opinion been disregarded, the claimant certified for some other amount and the Comptroller refused to pay the amounts so certified, there then would have been a question raised as to the respective powers of the Convention and the Comptroller under the Constitution. Claimant knew all these facts for some time prior *968 to the close of the Convention yet he took no action in the Convention itself. This was a matter which in our opinion he could and should have brought before the Convention. On all the facts, we find the claimant has failed to state a cause of action against the State within the jurisdiction of this court.
Claimant’s contention that his ultimate election was the result of an election conducted other than as provided for in the Constitution or the Buies of the 1967 Constitutional Convention presented a novel and unique argument which we feel should be discussed herein. Claimant argued that what he characterizes as the unusual action by the Convention entitled him to the full salary. He contended that the effect of the Constitutional Convention Eesolution No. 45 (supra) was to hold that no delegate had been elected at the general election and that the delegate for this district was to be and was elected at the special election held on July 11, 1967. He then reasoned that he was the sole and only delegate elected and that this made him a delegate from the day the Convention commenced. If he be right, it might be said that the payroll certification made by the President of the Convention was an act contra to the action already taken by the whole Convention in passing Eesolution No. 45.
The argument is based on the construction placed on Eesolution No. 45 by the claimant and in particular that portion of the resolution wherein it said “ It should be noted at this point that neither under the quoted provision of Article 19, section 2, of the New York State Constitution* nor of subdivision (a) of section 2 of Bule VIII of the Convention, is there a vacancy in the office of any district delegate which may be filled by a vote of the remaining delegates regarding the district in which such vacancy occurs. This follows from the fact that neither of the rival candidates has been duly ‘ elected ’ to the Convention.” (1967 N. Y. Const. Conv. Record & Index [Legis. Index Co., 1967, p. 269, supra]).
Santangelo was issued a certificate of election, presented it to the Convention, took the oath of office and was accorded the full rights to participate in the business of the Convention. These were matters within the discretion of the Convention itself. (Barry v. United States ex rel. Cunningham, 279 U. S. 597, 614.) He was paid and his official acts as an actual incumbent of that office were valid and binding. (Matter of Sherrill v. O’Brien, 188 N. Y. 185, 212-213.)
Whether the claimant is now entitled to the full salary on some such theory as suggested by him as a constitutional contract or otherwise is subject, of course, to the provisions of the Con *969 stitution. Again, while enjoying complete autonomy, the Convention could not operate in violation of the then existing Constitution. Claimant actually seeks to be paid for days that he was not qualified to act as a delegate and during which he did not discharge the duties of a delegate to the Constitution Convention.
The Constitution (art. VII, § 8) prohibits the gift or loan of State credit or money except for enumerated purposes. Claimant did not undertake his duties until July 17, 1967, some 96 days after the Convention commenced. This was through no fault of the State, as the certificates issued in connection with the general election and the special election were issued by a local Board of Elections for whose actions the State cannot be held liable. The exceptions (under N. Y. Const., art. VII, § 8) have to do with, among other things, permitting the Legislature to determine when there is a moral obligation and then providing the manner in which it may be met. In particular in the event of a moral obligation the Legislature may pass an enabling act empowering the Court of Claims to hear and determine such a claim in accordance with the direction contained in the enabling act. (See Ausable Chasm Co. v. State of New York, 266 N. Y. 326.)
In Ausable Chasm Co. (supra) the Legislature had passed an enabling act empowering the Court of Claims to hear and determine a claim made by individuals for the construction of a bridge connecting two parts of a State highway. In 1913 at the time the bridge was built it was the duty of towns to build such bridges and the local authorities had refused to do so. The individuals who built the bridge some 20 years later obtained an enabling act. The court found the enabling act unconstitutional and said: ‘ The Legislature alone has power to determine when the credit or moneys of the State shall be used to promote the public welfare or convenience. It must weigh the importance of competing needs and demands upon the resources of the State. An individual impelled by expectation of personal profit, or by a sense of public spirit or of charity, may step in and provide out of his own resources for a need which the Legislature has neglected. He may thus earn the gratitude of the People of the State, but there can be no moral obligation upon the State to repay him for the voluntary expenditure of moneys to meet a need for which the Legislature has refused to make provision. That is the case here.” (p. 332.)
Claimant in filing his claim here is seeking to be paid for the days in which he neither was qualified to nor discharged the *970 duties of a delegate to the Constitutional Convention. In our opinion this would amount to a gift to him prohibited by the Constitution (art. VII, § 8). Further, there was no enabling act, empowering the court to hear and determine the claim made. Even assuming that there had been one, in our opinion on the facts before us, it would have" been unconstitutional.
In Stemmler v. Mayor of City of New York (179 N. Y. 473), one Stemmier was elected in 1869 a "Justice of the District Court in the City of New York for a term of 6 years commencing on January 1, 1870. A controversy arose between Stemmier and one McGuire as to who was legally entitled to the office. Somehow McGuire was issued a certificate of election which was filed and he performed the duties of that office from January 1, 1870 to October 15,1873 and received the salary. Litigation to determine the question as to who rightfully was entitled to the office was commenced and on October 15,1873 it was decided in favor of Stemmier. Whereupon Stemmier assumed the office and received the salary from that date on apparently until his death on March 28,1875.
Nearly 20 years after Stemmier’s death the Legislature enacted by chapter 543 of the Laws of 1894 an enabling act giving to the heirs of Stemmier a right of action for the salary of the office from January 1, 1870 until October 15, 1873. The heirs did not comply with the provisions of the enabling act and it was for this reason that their cause of action was dismissed.
However, in the Court of Appeals a question was raised in respect to the constitutionality of chapter 543 of the Laws of 1894 and this question was discussed by the court. While it dealt with the interpretation of that part of the Constitution dealing with gifts by local governments, it is the most analogous case, that we have been able- to find to the claim here made by the claimant and is equally applicable to' gifts of State moneys. McGuire had been paid the salary during the period that he had performed the duties of office of Justice of the District Court and the Court of Appeals said: 11 Therefore, we think it follows that as there was no liability on the part of the city to pay Stemmier or his representatives any portion of the salary which had already been paid to McGuire, to whom the city was liable while he held the office of such justice, the statute of 1894, requiring the defendant to pay its public money for a service never rendered for which it was not liable, falls within the inhibitions of the provisions of the Constitution to which we have already referred, [presently N. Y. Const., art. VIII, § 1] * * * The statute in question clearly falls within the inhibitions of the Constitution as amended in 1874, as it required the *971 city of New York to pay an amount for which it was not liable, legally nor in equity or justice. It in effect provided for á mere gratuity or extra compensation to a public officer, who had performed no service for the city, and had done nothing which entitled him, as against the city, to any such compensation, and directed the employment of funds of the city for other than city purposes.” (p. 483.)
Likewise, on the facts before us, the State was liable to Santangelo for the salary of the office while he was acting as a delegate; and he was so paid. In like manner here the State was not liable legally or in equity or justice to the claimant for the full salary as a delegate to the Constitutional Convention. To have paid it or to now order that the balance of it be paid would be providing a mere gratuity to the claimant who performed no service prior to July 17, 1967 and has done nothing which would now entitle him to be given by the State the additional compensation for which he now makes claim.
The State’s motion to dismiss the claim must be and hereby is granted. The claimant’s cross motion for summary judgment must be and hereby is denied. The claim must be and hereby is dismissed.