D. LAMBERT RAILING COMPANY, INC., Respondent, v COUNTY OF SUFFOLK, Appellant. (Action No. 1.)

ROYAL GUARD FENCE CO., INC., Respondent, v COUNTY OF SUFFOLK, Appellant. (Action No. 2.)

Second Department, April 6, 1981

### APPEARANCES OF COUNSEL

*David J. Gilmartin*, County Attorney (*Anton J. Borovina* of counsel), for appellant.

*Joseph D. Stim, P. C.*, for D. Lambert Railing Company, Inc., respondent.

*Semon & Braverman* (*Ronald B. Feingold* of counsel), for Royal Guard Fence Co., Inc., respondent.

### OPINION OF THE COURT

*Per Curiam.*

The main issues on this appeal involve the statutory

construction of chapters 944 and 945 of the Laws of 1974 and a determination of whether the appellant, County of Suffolk, properly exercised its discretion thereunder.

Respondent subcontractors seek extra compensation authorized by chapters 944 and 945 of the Laws of 1974, which were enacted by the Legislature upon a finding that the energy crisis had unfairly injured contractors dealing with State and local governments because of the unexpectedly large postbid increases in the cost of petroleum derivative and steel products to be supplied under their contracts. The statutes authorized affected public contractors to pass along part of these increases under certain circumstances through price adjustments to the contracts. By Resolution No. 349-1975 appellant determined to "avail itself of the right provided" by such legislation "to make such supplemental reimbursements," but only to the extent that extra compensation was sought for asphaltic road materials.

Respondents brought their actions upon the county's refusal to make any price adjustments for the steel products they had contracted to supply. Special Term sustained respondents' argument that chapters 944 and 945 were mandatory in authorizing such extra compensation for both petroleum derivative and steel products and did not simply authorize State and local governments to exercise their discretion in the matter. On appeal, respondents further argue that the county resolution was invalid because it unconstitutionally discriminated against suppliers of steel products.

We disagree with the decisions at Special Term, which were based on a construction of the chapters by the Appellate Division, Third Department, in *Grace Co. v State Univ. Constr. Fund* (55 AD2d 299, mot for lv to app dsmd 41 NY2d 803, 943). In that case the Appellate Division held (at p 301): "Defendant argues that chapters 944 and 945 merely authorize contract adjustments and do not mandate the use of this authorization. While the statute does use the word 'may', it is clear that the Legislature intended to enact legislation mandatory in character if the contracting agency of the State, which is considering the adjust-

ment application of the contractor, finds that the conditions precedent specified in the statutes have been met."

Both the legislative history contained in the bill jacket to these chapters, as submitted by appellant, and the opinion of the Attorney-General (1975 Opns Atty Gen 318) indicate that the permissive language used in the legislation reflected an intent to vest discretion in the governmental contracting agencies. Furthermore, chapters 944 and 945 were not novel attempts to relieve government contractors. An examination of the language employed in prior contract adjustment enactments shows that the State Legislature is explicit when it comes to mandating or merely entertaining (e.g., through the Court of Claims) such disbursements from the public purse (see, e.g., *Gordon v State of New York*, 233 NY 1; *Ausable Chasm Co. v State of New York*, 266 NY 326; *Seglin Constr. Co. v State of New York*, 249 App Div 476). In view of this tradition of both mandatory and permissive legislative authorizations for extra compensation, we conclude that the language employed in chapters 944 and 945 unambiguously demonstrates a legislative intent to vest discretion in the various government contracting agencies, and therefore we reject respondents' argument.

This conclusion also controls our analysis of respondents' alternative argument that the county resolution violated the Federal and State guarantees of equal protection by excluding them from the class of benefited contractors, and that therefore the resolution could only be saved from a declaration of unconstitutionality by construing it in such a way as to enlarge the class of beneficiaries so as to include respondents. This argument is limited to a bald assertion that since the State Legislature extended relief to suppliers of either steel products or petroleum derivatives such as asphaltic road materials, the county's responsive action in restricting the benefit class was arbitrary and discriminatory. Because we have held chapters 944 and 945 to have vested discretion in the county, however, the only question is whether that discretion was improperly exercised, and respondents do not articulate any grounds to justify a finding that the county resolution lacked a rational basis. Given the breadth of the discretion entrusted

to the county, this court should not disturb its exercise if any state of facts can reasonably be conceived to sustain the classification (see *Matter of Presnell v Leslie,* 3 NY2d 384, 390; *Matter of 436 West 34th St. Corp. v McGoldrick,* 288 NY 346, 350, mot for rearg den 289 NY 673; *Saratoga Harness Racing v New York State Quarter Horse Racing Comm.,* 42 AD2d 3, affd 33 NY2d 666). Although the challenged resolution contains no recitation of findings or statement of policy, any number of factors could properly have prompted the county to act as it did; for example, the county may have determined that the rise in the cost of asphaltic materials alone constituted the major portion of the total price increase for all materials involved in county contracts, and therefore posed the greatest threat to its highway program or to the general economic health of its local businesses. Thus, we cannot sustain respondents' argument.

For these reasons, the judgments must be reversed and the complaints dismissed.

HOPKINS, J. P., DAMIANI, MANGANO and O'CONNOR, JJ., concur.

Two judgments of the Supreme Court, Suffolk County, entered May 29, 1980, and July 28, 1980, respectively, reversed, on the law, without costs or disbursements, and complaints dismissed.