BERTHA G. SIMPSON, Claimant, *v.* STATE OF NEW YORK, Defendant.

(Claim No. 28311.)

Court of Claims, March 23, 1948.

*Joseph S. Attardo* and *Paul Muscarella* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Frank M. Noonan* of counsel), for defendant.

RYAN, J. Plaintiff has alleged in her claim, and has testified, that on July 12, 1946, she fell on the sidewalk in front of the New York State Armory on Main Street East in the city of Rochester and sustained personal injuries. Photographs introduced in evidence disclose a spot in one of the sidewalk blocks where the top finish of the cement had disintegrated to some extent, exposing the coarser aggregate of the underlying composition and presenting an irregular and rough surface. This spot appears to be generally pear-shaped and witnesses described it as measuring eighteen inches across and as being unevenly depressed in depths of one to two inches. Plaintiff testified that at about 11:45 P.M. on July 12th aforesaid, she was walking in an easterly direction on the northerly sidewalk of Main Street East and that, as she was passing the Armory, a street sprinkler was proceeding in a westerly direction; that the spray from it was coming beyond the curb; that this caused her to step away from the center of the sidewalk and over to the northerly side; that she walked just a few steps when she got into the broken part, which was wet from the spray, and that she slid and fell.

Plaintiff's version of her accident is, in some particulars, corroborated by two of the three witnesses who testified that they came upon plaintiff within a brief time after it occurred. However, the third person who came to plaintiff's assistance, a captain of the State Guard, testified that he came out from the Armory on the night in question, that he proceeded easterly along the sidewalk and that he passed the disputed spot; that he heard a moan which attracted his attention and that he found the plaintiff lying on the sidewalk in front of the office of the Otis Lumber Company, at a point eight feet east of the Armory property and approximately twenty feet beyond the disintegrated cement shown in the photographs.

We have come to the conclusion that the plaintiff is mistaken as to the place where she fell and that the preponderance of credible evidence rests with the defense and requires a finding that plaintiff did not fall in front of the Armory. Upon such a finding of fact the claim must be dismissed.

However, were we convinced that plaintiff fell where she says she did, and assuming that we were to find that her fall was due to the disintegrated condition of the sidewalk, and that she was free from contributory negligence, it is our view, nevertheless,

that plaintiff could not recover herein. The State of New York here defends as the owner of real property abutting upon a city street — a novel situation, if our recollection of many and various causes of action pleaded against the State of New York serves us correctly. We believe that the State of New York, as an abutting owner, owed no duty to this plaintiff to keep the sidewalk in repair for the reason that the repair of public streets and sidewalks is peculiarly within the province of the city authorities. However, the State did owe her the " negative duty not to negligently use the sidewalk here in question in such manner as to cause her injury to which she did, not materially contribute." (*Barker* v. *Kroger Grocery & Baking Co.*, 107 F. 2d 530, 532 [1939].)

The State maintained a driveway 16 feet wide along the easterly side of its Armory property. The Main Street curb had been cut down for a span of 18.6 feet giving access to the driveway over the sidewalk. The disintegrated spot, where plaintiff says she fell, was not in those blocks of cement sidewalk lying within the 18.6 foot width. It was, however, in a block adjacent to them. It was, moreover, immediately adjacent to a compacted area lying alongside the driveway and used by those frequenting the Armory, and by the public generally, as a parking area for vehicles. No barrier restrained any vehicle, which used the driveway or the parking area, from traversing that part of the sidewalk wherein lay the disputed spot. Plaintiff's counsel argues that " what men can do, they do do " and asks the court to infer that both light and heavy motor vehicles traversed the sidewalk block in question. There is no direct testimony of such use, and, what is more important, no evidence that the condition of the cement was due to such traffic. In fact there is testimony in the case, elicited on direct examination by a witness called by plaintiff's counsel, that the cement " was just rough, but it wasn't countersunk, or broken out."

It should be noted that in the *Barker* case (*supra*), there was evidence that defendant's " trucks could not accomplish the crossing without the wheels of its trucks passing over the cement sidewalk * * * and there was testimony by a witness who said he had seen appellant's trucks break the pavement." Again, in a case which antedates the general use of motor vehicles, plaintiff stumbled on a sidewalk flagging lying within the driveway area. There was direct testimony as to the cause of the condition by a witness who " was held up by a wagon crossing * * * " and " saw the front wheels turn over a

flagging and I saw the flagging on the south end come down and the front end raise up." (*Mullins* v. *Siegel-Cooper Co.*, 183 N. Y. 129, 133 [1905].) In another case, *Joel* v. *Electrical Research Products, Inc.* (94 F. 2d 588 [1938]), there was insufficient evidence to show that either the defendant or one for whose acts it stood responsible actually created the defect. But the verdict for the plaintiff was supported by adequate evidence that the break was well known to the defendant, that it was in the area which defendant used as a driveway, that it had been there ever since the defendant had leased the premises, about three years previous to the accident, and that the defendant from time to time had filled the broken part with cinders. Similar proofs are lacking in the record now before us.

Nor is there any claim here that the sidewalk was constructed in a special manner in order that the State's property might derive a special benefit. (*Nickelsburg* v. *City of New York*, 263 App. Div. 625 [1942].) Recent authorities follow the long established rule that an owner is liable for the proper maintenance of an ordinary sidewalk abutting his premises only if he creates the condition which causes the injury or where the manner in which the sidewalk is used produces the defective condition. But where there is no legally sufficient evidence of such creation or use by the owner or by one for whose acts he is liable, a verdict will not be upheld. (*Langfelder* v. *City of New York*, 271 App. Div. 309 [1946]; *Sciremammana* v. *City of New York*, 271 App. Div. 842 [1946].)

Witnesses disagreed as to the extent and severity of the depression. There was testimony by one witness that she had fallen at the same spot some months previous. It can be argued that the depression was " so slight as not to suggest to the mind of an ordinarily careful and prudent man that it was dangerous." (*Hamilton* v. *City of Buffalo*, 173 N. Y. 72, 74 [1903].) Not every hole in a public thoroughfare is the basis for an actionable wrong. The question is one of fact. (*Keener* v. *Tilton*, 283 N. Y. 454 [1940]; *Wilson* v. *Jaybro Realty & Development Co.*, 289 N. Y. 410 [1943].) Here, it need not be answered. Nor is it necessary to make findings as to plaintiff's contributory negligence or freedom from it, nor as to the extent of her personal injuries, her loss of earnings or the pecuniary value of damages she sustained. The claim is dismissed.