Bernard Ryan, P. J.
Claimant sues to recover for personal injuries, medical expenses, loss of earnings, and a small item of property damage sustained, she alleges, when she fell upon a freshly waxed and dangerously slippery floor in an unilluminated hall of a State armory located in the borough of Manhattan. Claimant alleges that on October 13, 1955, the day she fell, she was lawfully on the premises in the performance of her *724 duties as an election inspector. She charges the State with negligence in the maintenance of the armory and in failure to give notice of the dangerous condition. For the purposes of this motion, made by the Attorney-General to dismiss this claim for lack of jurisdiction, all of the allegations of the pleading are assumed to be true.
In Goldstein v. State of New York (281 N. Y. 396 [1939]) the Court of Appeals determined that members of the organized State Militia were not officers and employees of the State within the meaning of section 12-a of the former Court of Claims Act, that, therefore, the sovereign had not waived its immunity for their torts and that any other construction of the statute would be contrary to the history of military organization and control. Judge Htjbbs, in his opinion, distinguished the military as constituting a class separate and apart from the civil officers of the State. Although Goldstein’s administrator did not collect upon the judgment first rendered, it is interesting to note that the State paid a later judgment recovered pursuant to an enabling act (L. 1940, ch. 857), (Goldstein v. State of New York, 175 Misc. 114 [1940], certificate of no appeal issued). The rule of the Goldstein case was applied in Dembrod v. State of New York (185 Misc. 1061 [1945]), a suit for the accidental shooting of the claimant by a member of the National Guard during an ordered military demonstration. It was also followed in Farina v. State of New York (197 Misc. 319 [1950]), and in Lewandowski v. State of New York (198 Misc. 411 [1950]), in both of which liability was alleged on the basis of the negligent operation of a motor vehicle by a member of the National Guard.
Ten years after the Court of Appeals ruling in the Gold-stein case the Supreme Court, Appellate Division, Third Department, had occasion to review a decision of this court which found that the State had incurred no liability to the operator or to the passenger of an automobile which collided with a truck owned by the New York National Guard and driven by a sergeant of the guard. In Newiadony v. State of New York and Tamborino v. State of New York (276 App. Div. 59 [1949]) it was argued that the language of chapter 860 of the Laws of 1939 (Court of Claims Act, § 8) admitted a liability where none would have existed under chapter 467 of the Laws of 1929 (former Court of Claims Act, § 12-a). The Goldstein opinion had interpreted the earlier statute which had waived immunity from liability for the torts of officers and employees. The revision had waived ' ‘ immunity as to ‘ liability and action ’; but only where an individual or corporation would be required *725 tp answer to an action for the same thing.” Mr. Justice B'ehgaít, writing for an unanimous court admitted (pp. 60-61) that “ The new language is more general.” But he reasoned that whereas “ There are some public functions which by their nature could impose no liability even if all sovereign immunity were fully waived” (p. 62) and whereas “ the militia is required by the Constitution to be ‘ disciplined ’ and ‘ ready for active service ’ ’ ’ the function of training such militia was one which could not be treated as an act of an individual. Thus there could be no “ liability arising from the 1 torts ’ of the militia, either the result of force in its function or force in what is an incident to its function, its organization and training.”
Thereafter and by chapter 343 of the Laws of 1953, the Legislature by explicit language waived the State’s immunity and gave this court jurisdiction to hear and determine claims arising in tort involving motor vehicles owned by the National Guard and operated by its members. (Court of Claims Act, § 8-a.)
During the time which elapsed between the Goldstein decision and the Newiadony-Tamb orino decision not one but several claims against the State based upon its alleged negligence in the operation and maintenance o'f its armories were filed, heard and determined. In some, awards were made. For example there was Schwartz v. State of New York (Claim No. 20159 [1945]), wherein claimant slipped on an accumulation of ice resulting from water draining from the roof of the armory on Washington Avenue, Albany. No appeal was taken. There was also Fitzpatrick v. State of New York (195 Misc. 762 [1949]) wherein a 10-year-old boy, an invitee attending an exposition in the armory at Elmira, was injured on the armory elevator. Not appealed. In others there were dismissals upon the merits. For example, Simpson v. State of New York (192 Misc. 49 [1948], affd. 275 App. Div. 1065), wherein the court found as a fact that claimant did not fall on the sidewalk in front of the State armory but at a point in front of other premises not owned by the State. Also there was Olm v. State of New York (207 Misc. 610 [1955]), wherein the claimant slipped on an accumulation of snow and ice located on the sidewalk and curb in front of the State armory at Hudson and the court held (1) that the claimant had failed to establish that any negligence on the part o’f the State proximately caused his accident and (2) that the claimant had failed to establish his own freedom from contributory negligence. There were also filed Dreas v. State of New York (No. 28491 [1948]) *726 which alleged • a defective stairway at the main entrance to the Rochester armory, and Malecki v. State of New York (Nos. 31533-4 [1953]) which alleged a slippery floor in an armory at Buffalo. These three claims were discontinued upon stipulation. The claim of Summersill v. State of New York (No. 29792 [1950]) was dismissed for failure to state a cause of action but with leave to file an amended claim, a permission which was never exercised. This claim alleged negligence in the existence of an accumulation of snow and ice on the sidewalk adjoining the State armory at Bedford and Atlantic Avenues in Brooklyn.
Although the rule of the Goldstein case (supra) was not applied in the foregoing cases there are, nevertheless, two recent claims in which it was invoked to defeat suits arising out of the maintenance of armories. These are Long v. State of New York (208 Misc. 703 [1955]) and Keats v. State of New York (Claim No. 33221 [1955] not reported). Both were dismissed on motions for lack of jurisdiction under rule 107 of the Rules of Civil Practice. They are presented to us here by the Attorney-General as authorities for similar action in this case. The reasoning is, that since members of the organized militia are not employees or officers of the State but constitute a class separate and apart from its civil officers, and inasmuch as the State has waived liability for the torts of the members of the organized militia only within the limited scope of section 8-a of the Court of Claims Act (operation of vehicles and aircraft), and the control of the armories being vested by law in the militia and not in the State, this court has no jurisdiction.
Now, it must be admitted, we think, that the rationale of the Goldstein and similar decisions has its basis in the argument that the militia, should be free to perform its special functions without incurring any civil liability. As Mr. Justice Bebgan pointed out (Newiadony v. State of New York, supra, p. 61) no citizen undertakes to suppress an insurrection or to defend the State against invasion and no individual or private corporation undertakes to equip a military unit and put it in the field. But when the chief of staff of the State Militia permits the use of an armory of which he has control, “ by any federal, state, county, and municipal bureau, agency or department ”, as he may under the authority of section 183 of the Military Law (subd. 1, pars, d, f) is he performing a military function? To quote again from Newiadony v. State of New York (276 App. Div. 59, 62, supra): “We think there can be no such liability arising from the ‘ torts ’ of the militia, either the *727 result of force in its functions or force in what is an incident to its function, its organization and training.”
The claimant herein alleges that she was lawfully in the armory in the performance of her duties as an election inspector. We are not told whether or not the State of New York was receiving rent for the armory or upon what terms the Board of Elections had been permitted to use it. Such use is no doubt a proper one and one authorized by the statute (Military Law, § 183, subd. 1, par. f). But it can hardly be said that the chief of staff, in permitting such use, upon whatever terms his discretion indicated, was carrying out a military function or. performing one incident to the organization or training of the State Militia.
In this view it seems to us that the State of New York, if negligence be demonstrated upon a trial of the issues of- fact herein, may be held to respond in damages just as it would be liable for a similar tort shown in its care of any other public building, park or highway for the maintenance and operation of which it has the responsibility.
The motion is denied. Submit order.