Dorothea E. Donaldson, J.
Claimant’s injuries arose out of an accident which took place on the premises of the 69th Regiment Armory, also known as the 165th Infantry Armory, in New York City about 1:30 a.m. on the morning of April 23,1961. The claim for personal injuries sustained by Mrs. Butler and for loss of services and medical expenses by her husband, James J. Butler, timely filed and not assigned or submitted to any other tribunal, was founded on the alleged negligence of the defendant, the State of New York, in the ownership, management, .operation, maintenance and control of this armory. The proof offered was on the issue of liability only.
On April 22,1961, the Father Duffy Chapter of the 69th Regiment, a veterans’ organization associated with the Rainbow Division of World War I, after obtaining permission from the officer in charge at the armory, conducted its annual dance, as it had done in previous years, on the fifth floor of the armory. Refreshments for the affair were furnished by the G-aryowen Association, a private nonmilitary membership organization that had a liquor license and maintained a restaurant for army personnel and other veterans in the basement premises of the armory. No fee was charged for the use of the space and neither contract nor bond was executed.
Article 9 of the Military Law pertains to State armories. Armories situated in the City of New York, even though title thereto is vested in the corporation of the City of New York, have been maintained by the State of New York since 1942 (Military Law, §§ 179, 180; 1944 Atty. Gen. 111.) Section 181 designates the Division of Military and Naval Affairs as an agency of the State to procure Federal funds and to expend the same for, among other purposes, the maintenance and operation of armories, etc., for the organized militia.
Under section 182 of this law, all armories maintained for the use of the organized militia and all activities conducted therein are placed under the general charge and control of and are regulated by the chief of staff who is responsible to the *60 Governor therefor. Such section further provides for the designation of an officer to be in direct charge and control of each armory, etc.
.Subdivision 1 of section 183 indicates that, upon application, a recognized and approved veterans’ organization may be permitted to use facilities within an armory for a social event and the remainder of the section defines the terms of usage.
Chapter 214 of the Laws of 1960 amended section 8-a of the Court of Claims Act to extend the waiver of immunity to armories when not carrying out a military function. However, when the armory facility is used for civic or social events, the liability of the State is determined in accordance with the same rules of law as apply to actions against individuals or corporations, especially where the situation is similar to that of the owner or operator of a place of public assembly. (Strassman v. State of New York, 3 Misc 2d 723, affd. 6 A D 2d 962; cf. memoranda in support of L. 1960, ch. 214.)
The defendant, the State of New York, contended that its employee, Colonel Lutz, exercised neither operation nor control during his custodial duties in maintaining the armory by providing heat, keeping the building and sidewalks clean and recommending repairs. It maintained that the duties of the officer in charge were confined to the management and supervision of the custodial maintenance of the armory relative to its use for military and nonmilitary activities.
The 69th Regiment Armory was constructed prior to 1920. Sometime after the termination of World War II and before April 6,1957 a new wooden floor of one-inch-thick oak was laid on top the old flooring on the fifth floor, extending to the entrance to the fifth floor stairway. It was the claimants ’ contention that the condition of the edge or nosing of the new top wooden floor where it joined the top step of the stairway was the proximate cause of Bessie Butler’s fall and subsequent injuries. Claimants’ expert architect testified that in June, 1964 he observed that the nosing was a piece of wood about two and a half inches wide that was chamfered, or shaped or ramped down, so that the face of the nosing was 3 inches wide and projected 1 inch above the stone stairway step, and that the top tread was 9 inches wide, being less than the customary 10-inch width. He also stated that this noticed condition was not constructed in accordance with good architectural practice as of the date of his observation.
No proof was submitted to show that the responsibility for directing the laying of, the construction of, or the payment for the work done on the new floor was that of the defendant, the *61 State of New York. There was, likewise, no proof that such repair failed to conform to good architectural practices or violated the provisions of the Code of the City of New York in existence at the time of the repair. The officer in charge testified that no accidents occasioned by the raised nosing or the narrower tread had been reported to him, with the exception of the instant claim, during his five years of duty, even though the fifth floor was used for military and nonmilitary purposes. (Holmes v. State of New York, 5 Misc 2d 838.) The State had a responsibility for maintenance of the armory in the condition in which it was received and to exercise reasonable care. This it has done.
Even assuming, arguendo, that the top tread of the fifth floor stairway was one inch narrower than good architectural practice required, it was, according to the testimony of claimant, Bessie Butler, the leather heel of her shoe that slipped on the nosing, precipitating her fall. In normal walking the ball of the foot would impact the chamfered floor. The record also indicated that Mrs. Butler was not unfamiliar with this stairway for she had attended previous functions conducted by this organization in this armory and had walked down the stairs from the fifth to fourth floors without incident. Claimant admitted that the stairwell was lighted and that she could see the stairway on the morning in question.
The claimants have failed to sustain the burden of proof and have failed to show freedom from contributory negligence.
The claim must be, and hereby is, dismissed.
The motions made by the defendant at the close of claimants’ case, upon which decision was reserved, are now denied; those made at the close of the entire ease, upon which decision was reserved, are granted.