MORRIS GOLDSTEIN and BECKY GOLDSTEIN, as Administrators, etc., of JACK GOLDSTEIN, Deceased, Claimants, v. THE STATE OF NEW YORK, Defendant.

(Claim No. 25712.)

Court of Claims, August 27, 1940.

*Samuel S. Leibowitz* [*Julius Applebaum* of counsel], for the claimants.

*John J. Bennett, Jr., Attorney-General* [*Leon M. Layden, Assistant Attorney-General,* of counsel], for the defendant.

RYAN, J. This claim was filed pursuant to chapter 857 of the Laws of 1940. By stipulation it is submitted for determination upon the record of the trial of a previous claim filed by these same claimants and designated as No. 24726. That claim reached an ultimate decision in the Court of Appeals adverse to the claimants. (See 168 Misc. 337; revd. and new trial granted, 256 App. Div. 141; award after second trial affirmed, 257 id. 897; revd., 281 N. Y. 396.)

The claimants' intestate was a member of the 105th Field Artillery, New York National Guard. He died as the result of an accident on August 9, 1936, while riding in an automobile truck driven by a fellow member of his regiment. Our findings that the driver was negligent and that the decedent was free from contributory negligence, made upon the previous trial, were not disturbed by the Court of Appeals. As no new evidence has been presented on those issues the same findings will be made herein. Likewise, in respect to the amount of damages sustained there is no reason to change the findings formerly made.

Although he has supported his motion with no brief of authorities on the subject, the Attorney-General has moved to dismiss this claim upon the ground that the enabling act is unconstitutional. The motion arrests attention. In his opinion for reversal (281 N. Y. 403) Judge HUBBS said: " The statement that the State may be liable in damages to a soldier or his dependents, because of injuries inflicted upon him through the negligence of a brother soldier or officer, except as provided in the Military Law, is rather startling. We think that the general understanding has always been that for injuries suffered by a soldier in active service the government makes provision by way of a pension. That this State has done in the Military Law (§§ 220–224), wherein it is provided when an allowance may be made, for what it may be made, the procedure to be followed and the amount that may be allowed. In fact, a complete system is set up for handling such claims. To justify a decision that another concurrent remedy has been created whereby the State may be made liable in unlimited amounts requires a statute to that effect, the meaning and intent of which is unmistakable. ' Statutes in derogation of the sovereignty of a State must be strictly construed and a waiver of immunity from liability must be clearly expressed.' (*Smith* v.

*State,* 227 N. Y. 405, 410.) The learned counsel for respondents earnestly urges that former sections 12 (L. 1920, ch. 922, as amd. L. 1936, ch. 775) and 12-a (L. 1929, ch. 467, as amd. L. 1936, ch. 775) of the Court of Claims Act in effect at the date of the death of claimants' intestate constitute such a statute."

Upon consideration of the statutes cited Judge HUBBS went on to hold that neither Private Goldstein, nor his fellow private, nor the corporal nor their superior officers were " acting in any employment of the State " but " were citizens performing a public duty under the Military Law " (p. 405).

Foregoing the provisions for a pension set up in the Military Law these claimants thus elected to sue and pursue to final judgment a claim against the State. That judgment was rendered in favor of the defendant herein. It was said in *Gilman* v. *Tucker* (128 N. Y. 190, 204): " We must bear in mind that a judgment has here been rendered, and the rights flowing from it have passed beyond the legislative power, either directly or indirectly, to reach or destroy. After adjudication the fruits of the judgment become rights of property. These rights became vested by the action of the court and were thereby placed beyond the reach of legislative power to affect."

In *Mendelson* v. *State* (136 Misc. 242) we followed the doctrine that " Where litigation has proceeded to a judgment which determines the controversy on its merits, it is beyond the power of legislation to alter or control." (12 C. J. § 302, p. 828.) And we held that an act of the Legislature which in practical effect directed an award by this court to claimants by increasing the amount of a final judgment which they had recovered was an allowance of a private claim in violation of the constitutional provision.

However, the affirmance of our decision dismissing the claim by the Court of Appeals (254 N. Y. 530) was upon the ground that the Enabling Act (Laws of 1929, chap. 601) was in conflict with section 6 of article VII of the Constitution (now part of section 19 of article III). This point was not raised before our court. (Compare McKinney's Consolidated Laws, vol. 2, 1938 Cumulative Annual Pocket Part, pp. 91, 151, with McKinney's Constitution published in 1939, p. 725.) The article in question prohibits the audit and allowance of a claim which as between citizens of the State would be barred by lapse of time. That objection would not be good here, if the Enabling Act is otherwise valid, for the reason that by its enactment the claimants' demand first had a legal existence against the State. (*O'Hara* v. *State,* 112 N. Y. 146, 154.)

But while the Legislature is powerless to alter the effect of concluded litigation as between individuals, does the same rule apply as between an individual and the State itself? In the case of *Wrought Iron Bridge Co.* v. *Town of Attica* (119 N. Y. 204, 211) Judge DENIS O'BRIEN said: " It is also urged, in behalf of the appellant, that the Legislature had no power to legalize and validate a claim against the town which had already been declared invalid by the judicial tribunals. That this power exists under the Constitution in a proper case was decided in this court in *Town of Guilford* v. *Supervisors* (13 N. Y. 143). The doctrine of that case has been steadily followed ever since in numerous other cases as late as the case of *Cole* v. *The State* (102 N. Y. 48). The principle that claims, supported by a moral obligation and founded in justice, where the power exists to create them, but the proper statutory proceedings are not strictly pursued, or for any reason are informal and defective, may be legalized by the Legislature and enforced either against the State itself or any of its political divisions through the judicial tribunals, is, we think, now well settled." Thus it appears that although " Generally, retrospective laws are unconstitutional if they disturb or destroy existing or vested rights, including rights embodied in judgments or judicial decisions * * *. The State may constitutionally pass retrospective laws waiving or impairing its own rights, or those of its instrumental subdivisions; and it may impose upon itself or its subdivisions new liabilities with respect to transactions already past." (16 C. J. S. [Const. Law] § 417, pp. 861–865.)

This principle was recently recognized by this court in its decision in the case of *Agnew* v. *State* (166 Misc. 602; certificate of no appeal issued March 24, 1938).

What is essential to the validity of the statute waiving the rights of the State is an existing moral obligation.

" A moral obligation is a duty assumed in obedience to the rules of right conduct. People differ as to the standard of right conduct. Some take as their standard of moral duty the letter of the law; others the Golden Rule. The question is not as to our own standard but the standard which the city may adopt. Is it an impossible, quixotic standard whereby the money of the city may be given away without regard to any visible equity or does it rest on common sense conceptions of moral duty? * * * The common law fixed a standard of liability which relieved the city. The city has chosen to be more liberal. It cannot be said that the standard of duty which it has adopted has nothing to sustain it." (POUND, Ch. J., writing in *Matter of Evans* v. *Berry*, 262 N. Y. 61, 70.)

For an exposition of " the general principles which the Legislature may or must observe when proposing to turn a moral obligation into a valid claim," we turn to the opinion of Judge HISCOCK, who said in *Williamsburgh Savings Bank* v. *State* (243 N. Y. 231, 241): " The decision by the Legislature that certain facts create a moral obligation, even if those facts exist, is not conclusive. The courts will still be called upon to decide whether its judgment was correct. * * * And the final duty of awarding or adjudging payment must be performed by some appropriate body after consideration of the facts and law with full power to reject as well as to award."

We call attention to the following statement in the opinion for reversal in *Goldstein* v. *State* (281 N. Y. 396, 405): " It has been the practice in cases where the Legislature believed a moral obligation existed to pay damages to a soldier or his dependents for injuries received in active service, to pass an enabling act authorizing the Court of Claims to make an award." This plainly implies, in our opinion, that a proper enabling act would have been sustained. Tested by the rules expounded in the *Williamsburgh* case (*supra*), we believe that the enactment here in question (Laws of 1940, chap. 857) is one " the meaning and intent of which is unmistakable " and which justifies a decision that in addition to the provisions of the Military Law " another concurrent remedy has been created whereby the State may be made liable " in an amount which we have authority to determine. As we have seen that the validity of such an act is not impaired by the previous adjudication the claimants are herein entitled to recover. Enter decision accordingly.

BARRETT, P. J., concurs.

BARRETT, P. J. (concurring). A pension is a reward for past services and designed to assist the pensioner in providing for his daily wants. (48 C. J. p. 786.)

Under section 220 of the Military Law a pension is provided where the death of a member of the active militia occurs from any wound or injuries received while engaged in actual service. This pension is payable to his widow, minor children or dependent mother. By section 130 of the Decedent Estate Law it is provided that damages may be recovered by an executor or administrator for a wrongful act, neglect or default resulting in the death of a decedent who left surviving a husband, wife or next of kin. The damages recoverable are stated in section 132 to be the fair and just compensation for the pecuniary injuries resulting to the person or persons for whose benefit the action is brought and include the

reasonable expenses of medical and nursing care and attention, and the reasonable funeral expenses and interest from the time of death. By section 133 it is provided that damages are exclusively for the benefit of the decedent's husband or wife and next of kin, to be distributed as unbequeathed assets after payment of debts and expenses of administration.

Therefore, as under the Military Law the pension is payable only to the widow, minor children or dependent mother, while the damages sought here are payable under the Decedent Estate Law to a decedent's wife and next of kin and include amounts not provided for in the Military Law, it follows that an award allowable under the enabling act is not the granting of extra compensation as prohibited by section 10 of article 9 of the Constitution. Nothing is added to the pension. Distinct and different damages are allowable to different beneficiaries. Nor is the act repugnant to section 8 of article 7 of the Constitution. It provides for the recognition of a moral obligation which the State clearly had the right to recognize. I concur with Judge RYAN in deciding that claimant is entitled to an award.