John Carroll Young, J.
These claims alleging negligence were timely filed on September 30, 1959, pursuant to separate enabling acts (L. 1959, chs. 685-688) which became law on April 22, 1959. Subsequent to the passage of the enabling acts, the claims have been prosecuted with due diligence. None of these claims has been assigned or, except as hereinafter mentioned, submitted to any other court or tribunal for audit or determination. They arose out of an automobile accident which occurred on August 19, 1950.
*678 On that date, at about 3:15 p.m., Orrin J. Thorne was operating his 1936 Ford, four-door sedan, with his wife, Lora Thorne, and daughters Beverly, then age 8 years, and Jean then age 12 years, as passengers, at about 30 miles per hour in an easterly direction on Route 23 near the hamlet of Leeds. It had been raining for some time prior to, and was raining at the time of the accident.
Route 23, in the area of the accident, runs uphill for eastbound traffic and downhill for westbound traffic. It is a two-lane concrete highway marked with double .solid white center lines. Gravel shoulders adjoin the highway.
At the aforesaid time, approaching the accident scene, proceeding downhill in a westerly direction was a two and one-half ton motor truck towing a 105-millimeter Howitzer cannon operated by a New York State National Guardsman in the movement of the 105th Field Artillery Battalion of the New York State National Guard to Pine Camp, New York. The two-wheel cannon carrier was attached to the truck by a swivel hook and pin. There was no braking equipment or other control between it and the motor truck.
As the National Guard truck with cannon attached continued downhill toward the point of the accident, it was partly in the eastbound lane over the double white center lines which divided the highway. It was traveling about 40 miles per hour. At this time, claimant Orrin J. Thorne observed the speed and location of the approaching National Guard truck, and sounded his horn. The speed of the truck was suddenly checked, the cannon carriage skidded and the entire unit slid toward the Thorne car. In his efforts to get out of the path of the motorized unit, Thorne drove his car to the right, off the travelled portion of the highway and stopped. The National Guard unit, after going out of control, skidded at an angle for a distance of about 100 feet, and the barrel of the cannon struck the upper left side of the Thorne car causing extensive damage thereto and personal injuries to the female passengers.
From the evidence presented at the trial, there is no doubt that under the law as it now exists, the State of New York would be liable for the damages sustained by the claimants herein; the negligent operation of the National Guard unit and failure to keep the same under proper control were the proximate causes of the accident and resulting injuries and damages to the claimants, and they were free of any contributory negligence. However, at the time of this accident — August 19, 1950 — the Court of Claims had no jurisdiction of these claims for the reason that the State had not, under section 8 of the Court of Claims Act, waived its sovereign immunity from liability for torts of *679 members of the organized militia of the State. (Goldstein v. State of New York, 281 N. Y. 396; Farina v. State of New York, 197 Misc. 319.) As a matter of fact, the claimants herein filed claims for the recovery of damages on November 15,1950 (Claim Nos. 30548 to 30551), but on motion of the State they were dismissed by separate orders dated May 15, 1951 and filed with the Clerk of the Court of Claims on June 19,1951, on the ground that the court lacked jurisdiction to hear and determine the same. Section 8-a of the Court of Claims Act by which the State waived its immunity from liability with respect to torts of the organized militia was enacted effective May 1, 1953, and said law as enacted contained a provision that the act applied only to torts committed after that act took effect.
At the beginning of the trial, the State moved to dismiss each claim upon the grounds that the court does not have jurisdiction, the Attorney-G-eneral calling the court’s attention to such provision that the act by its terms applied only to those claims occurring after the effective date of the statute, and that these claims had arisen more than three years prior to such effective date. He charged that the enabling acts which authorized the filing of these claims were private bills for the benefit of certain people, and not a general waiver and for that reason, all are unconstitutional.
While it has been said that, generally, retrospective laws are unconstitutional if they destroy or disturb existing or vested rights, nevertheless the State may constitutionally pass retrospective laws waiving or impairing its own rights, and it may impose upon itself new liabilities with respect to transactions already past. (Goldstein v. State of New York, 175 Misc. 114; 16A, Ó. J. S., Constitutional Law, § 417, pp. 99-102.)
A statute should be upheld as constitutional if it is possible to do so without disregarding the plain command or necessary implication of the fundamental law. (Matter of Prime, 249 App. Div. 28; Bowen v. City of Schenectady, 136 Misc. 307, affd. 231 App. Div. 779.)
The Legislature can recognize and provide redress for the State’s liability for past obligations equally with its right to waive its immunity for claims to arise in the future.
Courts of original jurisdiction should not declare a statute unconstitutional unless violations are plain and patent on the face of the statute. (Matter of 1175 Evergreen Ave., Bronx County, 158 Misc. 158, affd. sub nom. Matter of Mortgage Comm. [1175 Evergreen Ave.], 270 N. Y. 436; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150.)
*680 The claimants endeavored promptly after the accident occurred to prosecute their claims, but the State had not at that time waived its immunity from liability therefor, and this was the basis of the judgments dismissing the claims above mentioned.
Moreover, the subsequent adoption of section 8-a of the Court of Claims Act, by which the State waived its immunity from liability for torts of the organized militia, still afforded these claimants no remedy for their wrongs, since that law specifically provided that it applied only to torts committed after it took effect, which was on May 1, 1953. At this point it may be observed that these claims were still free of the constitutional prohibition found in section 19 of article III of the New York State Constitution, since the statutory limitation period of three years in which actions based on negligence may be brought had not commenced to run and the statute was tolled, since there still existed no forum or tribunal in which these claims could be presented for determination. (Homer Eng. Co. v. State of New York, 12 N Y 2d 508, 510-511; Munro v. State of New York, 223 N. Y. 208; Oswego & Syracuse R. R. Co. v. State of New York, 226 N. Y. 351, 360; Matter of Meyer, 117 Misc. 511.) This tolling of the statute continued until the passage of the special enabling acts under which these claims have been now presented. The Legislature, recognizing the moral obligation of the State, has now determined by such enabling acts to give the claimants an opportunity to present their claims and by authorizing this court to consider their merits has provided a forum in which these claimants may prosecute their claims. This it had the right to do. (Farrington v. State of New York, 248 N. Y. 112; Cole v. State of New York, 102 N. Y. 48; O’Hara v. State of New York, 112 N. Y. 146; Campbell v. State of New York, 186 Misc. 586; Ausable Chasm Co. v. State of New York, 266 N. Y. 326; Agnew v. State of New York, 166 Misc. 602.)
Prior to the passage of section 8-a of the Court of Claims Act, the Legislature of this State passed many laws (similar in nature to the enabling acts in these cases) by which the State assumed in special instances contingent liability for acts of members of the State militia where none previously existed, recognizing the moral obligation on the part of the State for acts of individuals in the State service or others for whose acts the State might justly be regarded as responsible; claims of the nature of the instant claims do not come within the inhibitions of the Constitution, .but rather are such as to suggest to the “ judicial mind and conscience that * * * [they belong] to a class concerning which the Legislature, in the exercise of a *681 wide discretion, might reasonably say they are founded in equity and justice and involve a moral obligation on the part of the State which it should satisfy”. (Farrington v. State of New York, 248 N. Y. 112, 115, supra; Barish v. State of New York, 197 Misc. 909.)
It was, therefore, held in the Farrington case {supra) that while the Legislature may not sanction a mere gift of public moneys for private purposes, it may acknowledge the justice of private claims against the State and provide for the audit and allowance of such claims against the State by the Court of Claims and the propriety of its action is not subject to court review. (Sherlock v. State of New York, 114 Misc. 491, affd. 198 App. Div. 494; Williamsburgh Sav. Bank v. State of New York, 243 N. Y. 231; Farrington v. State of New York, supra; Munro v. State of New York, supra; Cole v. State of New York, supra; O’Hara v. State of New York, supra.)
All doubts should be resolved in favor of the constitutionality of the acts irrespective of their wisdom. (Johnson v. City of New York, 274 N. Y. 411; Matter of Bareham v. Board of Supervisors of County of Monroe, 247 App. Div. 534.)
The courts are given the power of interpretation and not the power of legislation, and do not sit in review of the discretion of the Legislature or determine upon the expediency, wisdom, or propriety of its action in matters within its powers; except as limited by the Constitution, the power of the Legislature to enact laws is absolute, plenary and unlimited and may or may not be exercised, as the legislators choose, and its acts may be general in their application or may enunciate a rule for special cases. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 2.)
Accordingly, the motion of the Attorney-General to dismiss these claims upon the ground that the enabling acts under which they are brought are unconstitutional, on which decision was reserved at the trial, is hereby denied.
Since, as above-stated, this court determines upon the evidence herein that the negligence of the New York State National Guardsman operating such truck was the proximate cause of the accident and resulting injuries and damages sustained by claimants, and that each of the claimants was free from any contributory negligence, we pass now to the question of the amount of damages to which each is entitled.
[Bemainder of opinion not printed since not of general interest.]