[601 NYS2d 305]

JOSEPH SANTANGELO, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 81400.)

FRED KIRSCHENHEITER, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 81401.)

Second Department, August 9, 1993

APPEARANCES OF COUNSEL

*Kelly, Luglio & Arcuri,* Deer Park *(James J. Kelly* of counsel), for appellants.

*Robert Abrams, Attorney-General,* Albany *(Peter H. Schiff* and *Michael S. Buskus* of counsel), for respondent.

### OPINION OF THE COURT

BALLETTA, J. P.

The issue presented on this appeal is whether the Court of Claims exceeded its powers in declaring, *sua sponte,* that General Municipal Law § 205-e (as amended by L 1990, ch 762) was unconstitutional to the extent that it could be retroactively applied to revive the claims of the two claimants.

### I

The underlying facts of this case are not in dispute. The claimants—Suffolk County Police Officers Joseph Santangelo and Fred Kirschenheiter—were injured on July 15, 1979, when they attempted to apprehend a patient who had escaped from confinement at the State-run Kings Park Psychiatric Center (hereinafter Kings Park).

The patient apparently had a history of escape attempts from Kings Park. In fact, he had been delivered to Kings Park by Suffolk County police officers only a few weeks before the incident in question when he was involuntarily committed after having fired a rifle into a cabinet at his grandparents' home. On that last occasion, which was on May 9, 1979, the

police directed Kings Park's staff to inform them if the patient was discharged, since there were warrants outstanding for his apprehension. However, on May 17, 1979, the patient, who was considered potentially dangerous to himself and to others, escaped once more. Kings Park did notify the family and the police of the escape, but when he remained at large for more than 30 days, Kings Park simply marked him "discharged", which meant that its records no longer reflected that, in reality, he had escaped. The Suffolk County Police Department was then notified of the patient's "discharge", and it therefore canceled the warrants for him in the patient-escape file. Thus, as of the date of the incident herein, there was no current notation or other warning in police records as to the patient's escape status or as to his potential dangerousness.

On the morning of July 15, 1979, the patient's uncle called police headquarters and spoke with Officer Santangelo. He informed Santangelo that the patient was an escapee from Kings Park and was at his grandparents' home, that he feared for their welfare and informed the police that the patient had previously fled at the sight of uniformed police officers. After Santangelo had first determined from the office teletype file that there were no outstanding warrants in the patient-escape file, he and Officer Kirschenheiter set out to apprehend him. When they found the patient and identified themselves as police officers, the patient produced a knife from his pocket and threatened them with it. In their ensuing efforts to subdue him, both officers were injured.

The two officers thereafter brought claims against the State, asserting that (1) the State was negligent in permitting this dangerous patient to escape and remain at large, and (2) the State violated New York State Department of Mental Hygiene regulations regarding escapees when the hospital marked the patient "discharged" and failed to give them the required notice of his actual escape and dangerousness.

On June 28, 1985, the Court of Claims (Benza, J.) dismissed the claims, holding that recovery upon such claims was against the public policy of the State of New York (see, Santangelo v State of New York, 129 Misc 2d 898). In February 1987 this Court affirmed the dismissal of the claims (see, Santangelo v State of New York, 127 AD2d 647), and the Court of Appeals, in turn, affirmed that determination in an opinion dated March 22, 1988, on the ground that recovery was barred by the "fireman's rule" (Santangelo v State of New York, 71 NY2d 393, 397).

Subsequent to the entry of the final judgment, the Legislature enacted General Municipal Law § 205-e (L 1989, ch 346 [eff July 12, 1989]) which generally created a right of action for police officers who were injured in the line of duty as a direct or indirect result of a person's violation of a rule, law, statute, or ordinance. After several Courts had held that General Municipal Law § 205-e was not to be retroactively applied (see, e.g., Ruotolo v State of New York, 157 AD2d 452; Guadagno v Baltimore & Ohio R. R. Co., 155 AD2d 981), the Legislature amended it in July of 1990 (L 1990, ch 762, § 1), by adding the following language: "§ 2. * * * [N]otwithstanding any other provision of law, including sections 50-e and 50-i of the general municipal law, section 3813 of the education law, section 10 of the court of claims act and the provisions of any general, special or local law or charter requiring as a condition precedent to commencement of an action or special proceeding that a notice of claim be filed or presented, every cause of action for the personal injury or wrongful death of a police officer which was pending on or after January 1, 1987, or which was dismissed on or after January 1, 1987 because this section was not yet effective, or which would have been actionable on or after January 1, 1987, had this section been effective is hereby revived and an action thereon may be commenced at any time provided that such action is commenced on or before June 30, 1991".

In August 1990 the claimants, relying upon the above-quoted amendment to General Municipal Law § 205-e, filed the instant claims based on the same alleged injuries suffered by them in 1979.

Apparently unaware of the 1990 amendment to the statute, the Attorney-General initially moved for dismissal of the claims pursuant to CPLR 3211 (a) (5), as barred by res judicata and the Statute of Limitations, and CPLR 3211 (a) (7), for failure to state a cause of action. However, in a supplemental affirmation served shortly thereafter, the Attorney-General contended that even if the recent amendment had revived the 1979 claims, dismissal would still be proper since the claimants had failed to specify or identify the statutes, rules, regulations, and/or ordinances which were allegedly violated.

The claimants thereafter cross-moved for partial summary judgment on the issue of liability, arguing that General Municipal Law § 205-e (as amended by L 1990, ch 762) gave them the unequivocal and absolute right to revive their claims, and that both the Court of Claims and this Court had found with

respect to the prior claims that the State's negligence and failure to comply with its own regulations with respect to escaped patients was the proximate cause of their injuries.

In reply, the Attorney-General noted that these claims had been reopened by the Legislature 2½ years after the Court of Appeals had affirmed their dismissal, and, without directly attacking the constitutionality of the 1990 amendment, the Attorney-General then posed the question: "[C]an the legislature take away the property right of a party who successfully defended a lawsuit to a 'final' conclusion as that word has been defined by the courts?" The Attorney-General did not proffer a direct answer to the question he had propounded. Instead, he concluded: "It is submitted that the Legislature created a new remedy that was not in existence in March 1988 when the Court of Appeals affirmed the dismissal of the original claim", and urged the court to grant the State's motion and to deny the claimants' cross motions.

In the order appealed from, the Court of Claims granted the State's motion, dismissed the claims, and denied the cross motions as moot. The Court of Claims interpreted the Attorney-General's reply affirmation as directly raising "the issue of whether the 1990 amendment to General Municipal Law § 205-e can constitutionally revive *Santangelo I*", i.e., the prior claims which were dismissed *(Santangelo v State of New York,* 149 Misc 2d 171, 175). The court opined that it had the authority to address such an issue: "In the absence of any prohibition, constitutional or otherwise, this court, in a cause of action created by statutory legislation, for money damages against the State, has the authority to determine whether the cause of action, as stated, is sustainable when tested against constitutional limitations imposed upon the Legislature". *(Supra,* at 175.)

Although the court noted that the instant claims fell squarely within the language of the amendment, it concluded that the claims were not sustainable. In its opinion, the amended statute was unconstitutional "to the extent that it be retroactively applied to revive *Santangelo I,* wherein final judgment has been obtained". *(Supra,* at 184.)

## II

The claimants argue that the Court of Claims exceeded its powers when it declared, *sua sponte,* that General Municipal Law § 205-e (as amended by L 1990, ch 762) was unconstitutional.

It should be noted that the Attorney-General, in his reply affirmation, had merely posed a rhetorical question as to whether the Legislature could lawfully revive a claim which had been litigated to final judgment and did not directly attack the constitutionality of the legislation. Thus, the court's declaration that Laws of 1990 (ch 762) was unconstitutional was not in response to any direct challenge to the statute and was, therefore, made *sua sponte (see, e.g., Zimmerman v State of New York,* 116 Misc 2d 521).

It is worthwhile to note that the "Attorney-General's constitutional obligation is to argue in favor of the constitutionality of the statute" *(Zimmerman v State of New York, supra,* at 526; *see also,* Executive Law § 71). Moreover, the Court of Appeals has also acknowledged "that the State which enacted [a statute] may not be heard to complain that the enactment is void as a violation of 'due process' " *(Sweeney v State of New York,* 251 NY 417, 419-420).

### III

We further find, contrary to the arguments of the Attorney-General and contrary to the opinion expressed by the Court of Claims herein, that the statute is constitutional.

The power of the Legislature to waive defenses available to the State and to create liabilities against the State where none had existed before has been recognized for over a century. In such a case, it is said that the exercise of such power is supported by moral obligation and founded in a sense of fairness and justice *(see, Wrought Iron Bridge Co. v Town of Attica,* 119 NY 204, 211). "The legislature is not confined in its appropriation of the public moneys * * * to cases in which a legal demand exists against the state. It can thus recognize claims founded in equity and justice, in the largest sense of these terms, or in gratitude or charity. Independently of express constitutional restrictions, it can make appropriations of money whenever the public well-being requires or will be promoted by it; and it is the judge of what is for the public good" *(Town of Guilford v Board of Supervisors,* 13 NY 143, 149; *see also, People ex rel. Central Trust Co. v Prendergast,* 202 NY 188, 197).

In *Munro v State of New York* (223 NY 208), for instance, the claimant, who was employed by Kings Park State Hospital in Suffolk County as a fireman and electrician, was seriously and permanently injured on September 27, 1909, when he was

assaulted by an inmate of the institution. On May 19, 1915, the Legislature passed Laws of 1915 (ch 658) which provided as follows:

"Section 1. The court of claims is hereby authorized to hear, audit and determine the claim of John I. Munro against the state for injuries alleged to have been sustained by him while in the employ of the state in the electrical department of the Kings Park State Hospital at Kings Park, and in the course of such employment, by reason of being struck by a patient in such hospital; and if the court finds that such injuries were so sustained, damages therefor shall constitute a legal and valid claim against the state, and the court shall award to and render judgment for the claimant for such sum as shall be just and equitable, notwithstanding the lapse of time since the accruing of damages, provided the claim herein is filed with the Court of claims within one year after this act takes effect.

"§ 2. This act shall take effect immediately".

Mr. Munro timely filed his claim for damages. The Court of Claims heard the matter and awarded him damages, and the award was affirmed by the Appellate Division, Third Department (*Munro v State of New York,* 181 App Div 30). On the State's appeal to the Court of Appeals, the Attorney-General contended, *inter alia,* that Laws of 1915 (ch 658) was violative of the State Constitution. The Court of Appeals upheld the constitutionality of the statute, holding as follows:

"That the state cannot give its money for private undertakings or in the exercise of gratitude or charity is firmly established * * * The legislature, however, is not prevented from recognizing claims founded on equity and justice though they are not such as could have been enforced in a court of law if the state had not been immune from suit. Many are the instances where the state has allowed claims for work performed, or material furnished, or improvements made in conjunction with quasi-public corporations, although there was no legal liability had the state been an individual instead of sovereign * * *

"The basis for such allowance has been the moral obligation or the equity arising out of the facts * * *

"When a man gives his services or his property to the state under such circumstances that no liability would be created to pay therefor, even if the state were an individual or a private corporation, the legislature may allow such a claim in good morals and fair dealings * * * Why should there not be a like

moral obligation to make some recompense to the man who in his work for the state by an unforeseen accident has given his life or limb? The moral obligation may be as urgent in the one instance as the other.

"The act, therefore, does not transgress the constitutional provisions mentioned" *(Munro v State of New York, supra,* at 215-216).

This legislative recognition of claims founded on equity and justice is firmly established, and the principle has been utilized to uphold the constitutionality of many an enabling special act, even where the transaction upon which it was founded had occurred long before *(see, Lehigh Val. R. R. Co. v Canal Bd.,* 204 NY 471; *Wheeler v State of New York,* 190 NY 406; *O'Hara v State of New York,* 112 NY 146; *Cole v State of New York,* 102 NY 48; *McArthur v State of New York,* 43 AD2d 652; *Babcock v State of New York,* 190 App Div 147, *affd* 231 NY 560).

Nor is the principle rendered inapplicable merely because the particular claim with which the statute concerns itself had previously been litigated to final judgment. " 'Generally [although] retrospective laws are unconstitutional if they disturb or destroy existing or vested rights, including rights embodied in judgments or judicial decisions * * * [t]he State may constitutionally pass retrospective laws waiving or impairing its own rights, or those of its instrumental subdivisions; and it may impose upon itself or its subdivisions new liabilities with respect to transactions already past.' (16 C. J. S. [Const. Law] § 417, pp. 861-865.)" *(Goldstein v State of New York,* 175 Misc 114, 117; *see also, Wrought Iron Bridge Co. v Town of Attica,* 119 NY 204, *supra.)*

"What is essential to the validity of [a] statute waiving the rights of the State is an existing moral obligation" *(Goldstein v State of New York, supra,* at 117; *see also, Matter of Evans v Berry,* 262 NY 61; *Matter of Unseld,* 44 Misc 2d 649; *Rieseberg v State of New York,* 40 Misc 2d 676). In the instant case, the moral obligation and sense of justice is readily discernable involving, as it does, injuries to two police officers due to the negligence of the State, which were sustained while performing their jobs in the service of the public good.

## IV

It is clear, then, that the instant claims were revived by the 1990 amendment to General Municipal Law § 205-e and that

the 1990 amendment is not unconstitutional. Having determined that these claimants may validly pursue their claims, we must finally address the issue of liability as raised by their cross motions for partial summary judgment.

When these claims were previously presented, both the Court of Claims *(see, Santangelo v State of New York,* 129 Misc 2d 898, *supra)* and this Court *(see, Santangelo v State of New York,* 127 AD2d 647, *supra)* found as a fact that the claimants' injuries were proximately caused by the State's violation of its own regulations in marking the patient as "discharged" 30 days after his escape. The decision of the Court of Claims in 1985 stated that "the facts surrounding [the patient's] several admissions to Kings Park leads the court to the inescapable conclusion that the State was negligent in failing to prevent [his] escape and in failing to take the proper steps to apprehend him after his escape of May 17, 1979" *(Santangelo v State of New York,* 129 Misc 2d, *supra,* at 901). In addition, this Court's 1987 decision stated that "[b]ased on the manner in which [the patient] was confined, and given his many successful escapes, three of which were accomplished in the same manner, the record clearly indicates an unreasonable and careless attitude on the part of the State toward the safety of the public as it related to the custody and supervision of this dangerous psychiatric patient. The hospital's discharge * * * 30 days after his escape was also not in accordance with the Department of Mental Hygiene regulations and policy manual" *(Santangelo v State of New York, supra,* at 647-648).

In view of these findings, the claimants are entitled to recover, and their cross motions for partial summary judgment on the issue of liability are granted. We are not unmindful of the recent Court of Appeals decision in *Cooper v City of New York* (81 NY2d 584) involving the application of the *Santangelo* (or "fireman's") rule to a situation where a police officer was injured through the negligence of a fellow officer. However, we find that *Cooper* is inapplicable to the case at bar since, unlike the claimants herein, the plaintiff in *Cooper* did not proceed under General Municipal Law § 205-e.

## V

In conclusion, the order appealed from is reversed, on the law, with costs, the State's motion to dismiss is denied, the cross motions for partial summary judgment in favor of the

claimants on the issue of liability are granted, and the matter is remitted to the Court of Claims for a determination on the issue of damages.

MILLER, RITTER and SANTUCCI, JJ., concur.

Ordered that the order is reversed, on the law, with costs, the motion is denied, the cross motions for partial summary judgment on the issue of liability are granted, and the matter is remitted to the Court of Claims for a determination on the issue of damages.