OPINION OF THE COURT
 

 Bellacosa, J.
 

 Ten years ago, New York City Police Officer Thomas Ruotolo was killed in the line of duty by a parolee. The officer’s widow and two other officers wounded in the incident have
 
 *253
 
 tried to sue the State for negligence. The claims rest on allegations that the State Parole Board wrongfully allowed the assailant to remain on parole. The first series of this litigation ended with the claims ruled out of court
 
 (Ruotolo v State of New York,
 
 141 Misc 2d 111,
 
 affd
 
 157 AD2d 452,
 
 lv denied
 
 75 NY2d 710,
 
 rearg denied
 
 76 NY2d 773).
 

 The Legislature, in enactments reactive to the court rulings, persisted in trying to allow the claims to be heard in the Court of Claims. The State challenges the authority and power of the Legislature to enact chapter 474 of the Laws of 1992, which purports to allow the claims pursuant to General Municipal Law § 205-e to be pressed retroactively by the persevering widow and the other two officers.
 

 When this Court entered its order denying leave to appeal in the first round of litigation, the Legislature did not become forever barred from exercising its substantial powers, including that of surrendering some of the State’s own vested rights with respect to the matter. To be sure, that power is not absolute and is constitutionally circumscribed. But when the Legislature finds and demonstrates, as it did here, that there is an adequate moral obligation as the basis for retroactively remedying the particular restrictions of General Municipal Law § 205-e, which otherwise barred the statutory claims advanced by claimants Mary Beth Ruotolo, Tanya Brathwaite and Hipólito Padilla in this matter, the Legislature’s power and exercise of that public policy choice should not be nullified by the courts.
 

 We agree with the Appellate Division that the claims should go forward in the Court of Claims, as the Legislature has prescribed, and that they should be resolved on their merits, and thus affirm the order of the Appellate Division and answer its certified question in the affirmative.
 

 L
 

 In the early evening of February 14, 1984, New York City Police Officer Thomas Ruotolo, and his partner, Officer Tanya Brathwaite, responded to a radio report that there had been a robbery of a moped at a gas station in the Bronx. As the officers alighted from their patrol car, George Agosto, standing next to a moped, immediately opened fire on the officers with a handgun, killing Officer Ruotolo and seriously wounding Officer Brathwaite. Off-duty Police Officer Hipólito Padilla, who tried to assist, was also seriously wounded in an exchange
 
 *254
 
 of shots with Agosto. The assailant was ultimately arrested after also being wounded.
 

 At the time, Agosto was on parole from a manslaughter conviction. He had been released in 1982, but was arrested on January 30, 1983 on charges of possession of a handgun and driving without a license. This arrest was reported to the Parole Board, but the charges were ultimately dismissed and Agosto was released. On July 5, 1983, Agosto was again arrested on charges of burglary and resisting arrest. The Division of Parole was notified. On August 4, 1983, Agosto was sentenced to four months in jail on a reduced charge of criminal mischief and he was released from Rikers Island on September 21, 1983. Although the police, prosecutor, court and parole authorities were aware of this arrest and conviction, and even though Agosto was considered an absconder after it was discovered he had vacated his last known address, none of this information was reported by the parole office to the Parole Board. No parole violation warrant was ever issued against him prior to the shooting of the police officers in February 1984.
 

 IL
 

 The claimants, Ruotolo’s widow, Mary Beth Ruotolo, and wounded Officers Hipólito Padilla and Tanya Brathwaite, sued in the Court of Claims on March 25, 1985, naming the State of New York as the sole defendant. Their theory was that had the Parole Board been properly notified, it would have had to revoke Agosto’s parole and he would not have been free to inflict the tragic harms he did. The claims were rooted in common-law negligence and negligence based on the alleged violation of the Executive Law § 259-i (3) and 9 NYCRR 8004.2.
 

 The Court of Claims in 1988 granted summary judgment to the State. It ruled that pursuant to
 
 Santangelo v State of New York
 
 (127 AD2d 647,
 
 affd
 
 71 NY2d 393
 
 [Santangelo "I"])
 
 and the "Firefighter’s Rule” which
 
 Santangelo "I”
 
 had extended to the police, the claims for common-law negligence were barred by public policy because the injuries were sustained as part of the officers’ inherently hazardous employment. Further, even viewing defendant’s alleged failure to revoke Agosto’s parole as a failure to enforce the Executive Law and 9 NYCRR 8004.2, claimants failed to state a claim because neither Executive Law § 259-i (3) nor 9 NYCRR 8004.2 created an
 
 *255
 
 independent duty in favor of the claimants which could support liability and circumvent
 
 Santangelo’s
 
 bar
 
 (Ruotolo ”I” v State of New York,
 
 141 Misc 2d 111,
 
 supra).
 

 On July 12, 1989 and during claimants’ appeal, the Legislature enacted section 205-e of the General Municipal Law, creating a claim for police officers injured in the line of duty. Pursuant to the amendment, police officers or their estate representatives had a right to recover for injuries which occurred directly or indirectly as a result of any neglect, omission, willful or culpable negligence by any person under the requirements of any applicable statute, order, or requirements of Federal, State, or county law
 
 (see,
 
 General Municipal Law § 205-e [L 1989, ch 346]). General Municipal Law § 205-e was enacted to bring police officers into parity with firefighters (L 1989, ch 346;
 
 see,
 
 Mem of Senator Skelos, 1989 NY Legis Ann, at 180), who were granted recovery rights against property owners whose negligence with respect to fire code violations caused injury
 
 (see,
 
 General Municipal Law § 205-a [L 1935, ch 800, § 2]).
 

 The Appellate Division nevertheless affirmed the dismissal of the original claims by the Court of Claims. The Appellate Division held the new General Municipal Law § 205-e inapplicable, since it was not intended to be retroactively applied
 
 (Ruotolo "I” v State of New York,
 
 157 AD2d 452,
 
 supra).
 
 This Court denied leave on April 26, 1990, and further rejected a motion for reargument in June of 1990
 
 (Ruotolo "I” v State of New York, lv denied
 
 75 NY2d 710,
 
 rearg denied
 
 76 NY2d 773,
 
 supra).
 

 The Legislature thereafter amended General Municipal Law § 205-e’s enacting legislation (L 1989, ch 346) to include a new effective date, which expressed that the remedy should be applied retroactively to revive actions dismissed on or after January 1, 1987 (L 1990, ch 762). Claimants promptly moved for reargument in the Court of Claims. That relief was denied on July 31, 1991, on the ground that while General Municipal Law § 205-e was retroactively applicable, it still was not applicable here, because section 205-e only " 'impose[s] clear duties on
 
 property owners
 
 and [is] intended to benefit firefighters, police officers and any other person who may enter upon premises subject to regulation’ ”
 
 (Ruotolo "II” v State of New York,
 
 151 Misc 2d 820, 828 [quoting Mem of State Executive Dept, 1989 McKinney’s Session Laws of NY, at 2141 (emphasis added)],
 
 revd
 
 187 AD2d 160).
 

 
 *256
 
 The Legislature, for a third time, amended General Municipal Law § 205-e, again during the pendency of appeal. This time, it provided a right of action to police officers injured in the line of duty, irrespective of whether they were injured as a consequence. of a statutory violation respecting the safe maintenance and control of premises (L 1992, ch 474). It is that precise statute that is now under review on this appeal.
 

 The Appellate Division concluded that there was no impediment, under the circumstances presented here, to the Legislature providing a procedural remedy for these claims to be pursued in the Court of Claims. That Court noted that the State, acting through the Legislature in this specific regard, had found and recited a moral obligation that extended to the protection of the police officers acting in the line of duty that justified granting the reasonable procedural redress and access to the judicial process with respect to an alleged failure by the State to fulfill its obligations to those officers and their families. The Appellate Division thus reversed the Court of Claims, granted claimants’ reargument motion and denied the State’s dismissal motion for summary judgment. It noted that "[t]he Legislature could not have been more specific,” and held that the Legislature had effectively clarified General Municipal Law § 205-e to allow the claimants’ right to sue, and remanded the matter to the Court of Claims
 
 (Ruotolo "II” v State of New York,
 
 187 AD2d 160, 170,
 
 supra; see also, Santangelo "II” v State of New York,
 
 149 Misc 2d 171,
 
 revd
 
 193 AD2d 25).
 

 The threshold question of this appeal is whether the claims under General Municipal Law § 205-e had been finally determined in the original litigation in this case. If final, the Court must proceed to the question whether the Legislature’s retroactive rendering of General Municipal Law § 205-e, affecting the claims at bar, violates the prohibition against the State making a gift or loan of State money (NY Const, art VII, § 8) or the provision concerning the audit and allowance of a time-barred claim (NY Const, art III, § 19).
 

 IIL
 

 A Court of Appeals denial of leave to appeal from an order of the Appellate Division affirming a grant by the Court of Claims of defendant’s motion to dismiss by summary judgment is a final determination
 
 (Collins v Bertram Yacht Corp.,
 
 42 NY2d 1033, 1034). Initially, therefore, we reject claimants’
 
 *257
 
 nonfinality theory that the amendments of General Municipal Law § 205-e created an entirely new claim that did not exist and that could, therefore, not have been dismissed during the time
 
 Ruotolo ”1”
 
 was being considered and decided. The interrelationship of common-law and statutory claims and labels in this rare combination of circumstances and on-going developments distinguishes this matter from the analytical framework and principle of
 
 Matter of Hodes v Axelrod
 
 (70 NY2d 364;
 
 see also, Matter of Meegan S. v Donald T.,
 
 64 NY2d 751) for finality purposes. If, of course, the first round of litigation did not finally determine the core issue, the State would, on that basis alone, lose this case because, in that event, the Legislature would not be even arguably prohibited from redressing the wrong it perceived in this travesty.
 

 However, we construe and deem
 
 Ruotolo "I”
 
 to be a final determination which created some vested rights in the State with respect to the matter at issue. Nevertheless, the Appellate Division, on the distinctive and intermixed circumstances of this case, correctly observed that:
 

 "Although the original 1989 version of section 205-e had already been enacted and was before us, we merely held that it could not be retroactively applied pursuant to the general rule that statutes are to be construed as prospective only in the absence of an unequivocal expression of a legislative intent to the contrary * * *.
 
 As a result, we did not reach the question of the statute’s applicability to this case” (Ruotolo ”II” v State of New York,
 
 187 AD2d 160, 167-168,
 
 supra
 
 [emphasis added]).
 

 General Municipal Law § 205-e allowed for an existing cause of action which the
 
 Ruotolo ”1”
 
 courts found to be not available in the circumstances of and at that time. Therefore, the claim was not extinguished and was ripe for express reopener by way of judicial determination under the ensuing legislation at chapter 762 of the Laws of 1990, which would allow judicial resolution of the claims. It purposefully clarified the original intent of the Legislature to make General Municipal Law § 205-e retroactive.
 

 Thus, the defendant State cannot plausibly maintain that the Legislature did not intend to give retroactive application to the remedies provided for in General Municipal Law § 205-e with respect to claimants who had litigated claims to final
 
 *258
 
 judgment before the amendments were enacted. All the evidence, plain language and actions of the Legislature and Governor in signing the bills into law are to the contrary. Thus, general bromides of statutory construction about retro-activity
 
 (see, e.g.,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 53) collapse under the weight of determined expressions and actions of the Legislature
 
 (see,
 
 L 1990, ch 762; Mem of State Executive Dept, 1990 McKinney’s Session Laws of NY, at 2494-2495; Governor’s Mem, 1990 McKinney’s Session Laws of NY, at 2746 [new legislation in direct response to the courts’ failure to apply section 205-e retroactively in
 
 Ruotolo "I”
 
 and
 
 Santangelo "I”]; see also, Ruotolo ”II”,
 
 187 AD2d 160,
 
 supra; Santangelo ”II” v State of New York,
 
 149 Misc 2d 171,
 
 revd
 
 193 AD2d 25,
 
 supra;
 
 L 1990, ch 762; L 1992, ch 474;
 
 see also,
 
 Budget Report on Bills, Bill Jacket, L 1990, ch 762 ["Arguments in Support: * * * b) * * * this bill would effectuate the remedial intent of the 1989 legislation inasmuch as it would permit resolution of cases pending in 1989 * * * which contributed to the need for the extension of the 'fire(fighter’s) rule’ to police officers. The courts have differed in their interpretation of the retroactivity of the 1989 legislation, and this bill would clarify legislative intent.”]).
 

 Since we conclude that the Legislature expressed itself most emphatically and plainly, and that it was not circumscribed by finality strictures in this case, we must turn next to the critical issue as to whether there are other limitations on its substantial power to enact legislation.
 

 IV.
 

 A primary line of argument by the State is that even if the amendments to General Municipal Law § 205-e were intended to retroactively revive claims previously litigated with finality, the State constitutional prohibition against giving gifts or loans was violated.
 

 The New York Constitution specifically forbids the gift or loan of property to a specific individual (NY Const, art VII, § 8 ["The money of the state shall not be given or loaned to or in aid of any * * * private undertaking * * * or in aid of any individual”]). When the Legislature demonstrates that an enactment challenged under this provision was both in response to a moral obligation of the State and does not undermine previously vested rights, the courts will not interfere with the exertion
 
 (Matter of Evans v Berry,
 
 262 NY 61;
 
 People
 
 
 *259
 

 ex rel. Central Trust Co. v Prendergast,
 
 202 NY 188). We have said that the Legislature may use public moneys to remedy an injustice in cases even when no legal obligation to pay existed, as long as some higher obligation of honor, fairness or broad public responsibility is identified
 
 (Matter of Mullane v McKenzie,
 
 269 NY 369, 376). Stated differently, it must affirmatively appear that not to act would condone a travesty of justice. With respect to claims previously litigated even to a final judgment on the merits, a "moral obligation” has been found sufficient to revive a State claim and may, by analogy, be used to overturn a final judgment in the State’s favor
 
 (Longines-Wittnauer Watch Co. v Barnes & Reinecke,
 
 15 NY2d 443,
 
 cert denied sub nom. Estwing Mfg. Co. v Singer,
 
 382 US 905;
 
 Gallewski v Hentz & Co.,
 
 301 NY 164;
 
 Farrington v State of New York,
 
 248 NY 112, 115).
 

 The moral obligation analysis generally involves a case-by-case examination. Here, the moral obligation issue is intertwined with whether the retrospective legislation is compensating a claimant by benefit rendered at the request of the State itself, and whether the claimant is pursuing a remedy for a wrong peculiarly attributable to the State as the responsible agent.
 

 "The principle that claims, supported by a moral obligation and founded in justice, where the power exists to create them, but the proper statutory proceedings are not strictly pursued,
 
 or for any reason are informal and defective,
 
 may be legalized by the legislature and enforced either against the state itself or any of its political divisions through the judicial tribunals, is, we think, now well settled”
 
 (Wrought Iron Bridge Co. v Town of Attica,
 
 119 NY 204, 211).
 

 If the waiver of immunity from liability imposed by the Legislature rests on an adequate moral obligation, then the bypass does not offend the no-gift prohibition. In
 
 Farrington v State of New York
 
 (248 NY 112,
 
 supra),
 
 this Court identified some areas in which a moral obligation may exist:
 

 "Instances in which enactments, authorizing the allowance of private claims, have been held to be constitutional, since it might reasonably be said that the sanctioned claims involved moral obligations, have been subject to classification under two heads. * * * The second are claims involving inju
 
 *260
 
 ries and damages wrongfully inflicted upon individuals by those in the State service or others for whose acts the State might justly be regarded as responsible”
 
 (id.,
 
 at 116;
 
 see also, Ausable Chasm Co. v State of New York,
 
 266 NY 326, 330, 331).
 

 In the search for that moral obligation justification for an otherwise presumptively constitutional enactment, courts naturally look to the expression and history of the particular legislation itself. In this case, we find the Legislature offering this preamble:
 

 "Section 1. Legislative intent. The legislature finds that the nature of modern police work in this state has exposed our police officers to a unprecedented risk of death and physical injury. In view of this fact, chapter 346 of the laws of 1989 gave injured officers and representatives of deceased officers a right of action against individuals found liable for such deaths or injuries” (L 1992, ch 474;
 
 see also,
 
 Letter of Senator Skelos as Sponsor, Bill Jacket, L 1992, ch 474).
 

 Further supporting our view that the Legislature illustrated a moral obligation is the fact that the revival of these claims allowed by the Appellate Division pursuant to General Municipal Law § 205-e did not grant judgment or bestow a direct, tangible gift of any forbidden State property. The claimants are allowed a lower order of entitlement — an opportunity to prove that the State was negligent in a special context and in recognition of a moral obligation
 
 (see, Farrington v State of New York,
 
 248 NY 112, 115,
 
 supra).
 
 That is not what the constitutional prohibition was designed to bar. It is, in a governmental sense, admirable that the law-enacting branches of government of the State have persevered so diligently to satisfy a perceived moral obligation to citizens for harms inflicted on them within a narrow constitutionally permissible framework.
 

 Next, the Appellate Division properly found that the retroactive effect granted under General Municipal Law § 205-e did not violate the constitutional prohibition against "the audit and allowance of a time-barred claim” (NY Const, art III, § 19;
 
 Jackson v State of New York,
 
 261 NY 134, 139;
 
 see also, Reiseberg v State of New York,
 
 40 Misc 2d 676, 678).
 

 Indeed, the State has also advanced the argument that a violation of due process as against its own interests occurred by the Legislature, in effect, overriding the State’s own vested
 
 *261
 
 rights. This has an ironical and anomalous ring to it, since the Attorney-General is under a paramount duty to defend legislative action in enacting statutes (Executive Law § 71;
 
 see also, Jackson v State of New York, supra; Sweeney v State of New York,
 
 251 NY 417). In the latter cases, the Attorney-General, as is done here, contended that the retroactive application of laws would be violative of due process somehow owed
 
 to
 
 the State with respect to which it had somehow deprived itself. This Court rejected that inherent contradiction by stating: "[c]ertain it is that the State which enacted it may not be heard to complain that the enactment is void as a violation of 'due process’ ”
 
 (Sweeney v State of New York,
 
 251 NY, at 419-420,
 
 supra; see also, Jackson v State of New York,
 
 261 NY, at 139,
 
 supra).
 

 V.
 

 We note, finally, that by allowing the claims to proceed, though previously not having recognized that procedural opportunity for redress, the State is by no means impliedly or expressly confessing judgment on ultimate liability. The State’s rights to defend itself on the merits of the claims is intact and plenary
 
 (compare, Matter of Greene v County of Niagara,
 
 166 NY 485, 494 [where judgment not on the merits, the Legislature may, in order that justice will prevail, direct its reexamination and determination]). In essence, the demonstration of a moral obligation allows the Legislature to legitimately and openly avoid the no-gift prohibition and to rectify a potentially egregious miscarriage of justice, through remedial legislation. That statutory outlet does not condone any prohibited gift or loan
 
 (see, Matter of Mullane v McKenzie,
 
 269 NY 369,
 
 supra; see also, Goldstein v State of New York,
 
 175 Misc 114), and our holding does not approve of any forbidden practice. The opportunity to have a day in court is at stake and resolved, and we hold simply that the Legislature is not constitutionally prohibited from providing that avenue of potential redress.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
 

 Chief Judge Kaye and Judges Simons, Levine and Ciparick concur; Judges Titone and Smith taking no part.
 

 Order affirmed, etc.